126

[647 NYS2d 491]

In the Matter of JUAN C., Appellant, v R. C. CORTINES, as Chancellor of the New York City Board of Education, et al., Respondents.

First Department, September 17, 1996

---

APPEARANCES OF COUNSEL

*Marcia Egger* of counsel *(Michael Raskin* on the brief; *Jane M. Spinak,* attorney), for appellant.

*Jane L. Gordon* of counsel *(Barry P. Schwartz* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for respondents.

### OPINION OF THE COURT

SULLIVAN, J. P.

This appeal is from the dismissal of a CPLR article 78 petition challenging the determination of the Superintendent of Bronx High Schools, affirmed by the Chancellor of the New York City Board of Education and the Central Board of Education, suspending petitioner, a 15-year-old student at William Howard Taft High School, from school for one year on a finding that he had carried a concealed, loaded handgun to school. The issue before us is whether the Superintendent should have applied the exclusionary rule and excluded from the administrative hearing the weapon which the Family Court, in a juvenile delinquency proceeding brought against petitioner based on the same incident, had suppressed as the fruit of an unreasonable search.

On the morning of December 8, 1992, Luis Mujica, a school security aide, not a security officer, who neither carried a gun nor wore a badge or uniform and whose principal responsibility was to assist the school's safety officers by monitoring the hallways, noticed petitioner walking toward him and suspected that he was carrying a gun because, according to Mujica, something that looked like the handle of a gun was pulling down the left side of petitioner's leather jacket, which was halfway closed. As petitioner passed him, Mujica, without saying anything, grabbed petitioner by the arm. When petitioner continued on his way, Mujica gave chase, caught up with petitioner and grabbed him at the site of the bulge. Mujica felt

a gun and pulled petitioner down the hall, announcing a "code red" (possession of a firearm) over his walkie-talkie. Mujica opened petitioner's jacket and another security aide who had responded reached in and removed a gun from petitioner's left inside pocket. A school security officer arrived and handcuffed petitioner, who, when taken to the Dean's office where he was questioned by a police officer after administration of his *Miranda* rights, stated that he had found the gun in a park. Petitioner confirmed this explanation of his acquisition of the gun in a written statement.

Mujica testified at the suppression hearing in the Family Court in the juvenile delinquency proceeding charging petitioner with four counts of criminal possession of a weapon. Petitioner also testified and, wearing the jacket he had worn on December 8, 1992, gave a demonstration of how he carried the gun in his jacket pocket. On the basis of the demonstration, the Family Court found that, contrary to Mujica's testimony, "the outline of the gun was not visible, the slight bulge was not in any particular shape or form and was not remotely suspicious." Accordingly, the court suppressed the gun and dismissed the juvenile delinquency petition. No appeal was taken from this determination.

At the school suspension hearing conducted over one month later, Mujica again testified. The Hearing Officer rejected petitioner's argument that res judicata barred relitigation of the propriety of the gun seizure. Finding that a higher standard of proof obtained in the Family Court, the Hearing Officer rejected the res judicata argument and found, based on Mujica's testimony as to his observation of the outline of a gun handle, that Mujica had reasonable suspicion to believe that petitioner possessed a gun and, thus, the seizure was justified. The Superintendent of Bronx High Schools approved the findings and petitioner was suspended from school for one year. That determination was upheld on appeal to the Office of the Chancellor of the Board of Education of the City of New York. Petitioner appealed the Chancellor's decision to the Central Board of Education, again arguing that the Family Court determination as to the illegality of the search precluded admission of the gun at the suspension hearing. The Central Board dismissed the appeal, agreeing with the Chancellor that the Family Court ruling was not binding at the suspension hearing, finding that the search was reasonable and that the weapon was properly admitted.

Petitioner then commenced this proceeding, arguing that his suspension was secured on the basis of illegally obtained evi-

dence. Respondents contended that the exclusionary rule should not apply in student suspension hearings and, alternatively, that the seizure of the gun did not violate petitioner's constitutional rights. After finding that the exclusionary rule did apply to student disciplinary hearings, the IAS Court dismissed the petition nonetheless, refusing to give res judicata or collateral estoppel effect to the Family Court's suppression ruling on the ground that the burden of proof in a Family Court suppression hearing is by clear and convincing evidence, while the burden of proof in a disciplinary hearing is by a preponderance of the evidence. In so ruling, the IAS Court misstated the applicable standard of proof at a hearing to suppress physical evidence. It is well settled that the burden of proof at such a hearing is on the accused to establish, by a fair preponderance of the credible evidence, that the police conduct complained of was illegal. (*See, United States v Matlock*, 415 US 164, 177, n 14.) In any event, "balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process" (*People v Drain*, 73 NY2d 107, 110), as we are required to do to determine the application and scope of the exclusionary rule, we conclude that the rule should have been applied at the disciplinary hearing to exclude evidence of the seizure of the gun.

The reasonable suspicion standard applies to searches by school authorities of the persons and belongings of students under both the Fourth Amendment (*New Jersey v T.L.O.*, 469 US 325) and New York Constitution, article I, § 12 (*Matter of Gregory M.*, 82 NY2d 588), although in the latter case, decided one year after the rendering of the Family Court suppression order, the Court held that a "less rigorous premonition" concerning the contents of a bag will justify a "minimally intrusive" investigative touching of the bag (82 NY2d, *supra*, at 591). As was acknowledged in the administrative decisions in this matter, the reasonable suspicion standard has been codified in Chancellor's Regulation A-432.

The Family Court suppressed the weapon because it rejected security aide Mujica's testimony that he could see the outline of the handle of a gun in petitioner's jacket pocket. With the discrediting of this testimony there was no basis for a finding of reasonable suspicion. Even if, as argued by respondents, the lesser standard of a "less rigorous premonition" enunciated in *Matter of Gregory M.* (82 NY2d, *supra*, at 591), which was applied there to the touching of a bag, not the person, were applicable, given Family Court's rejection of Mujica's testimony

that he saw the outline of the handle of a weapon through petitioner's jacket, there was nothing to justify Mujica's grabbing petitioner at the site of the bulge to determine whether he had a gun. Thus, the Family Court's determination to suppress the weapon remains unassailed.

In any event, Family Court's suppression of the weapon as the product of an illegal search and the concomitant dismissal of the juvenile delinquency petition is immune from challenge in this proceeding on collateral estoppel grounds. The prerequisites for applying the doctrine have all been met: identity of parties and issues; a prior proceeding resulting in a final and valid judgment in which the party opposing the estoppel had a full and fair opportunity to litigate. (*People v Goodman*, 69 NY2d 32, 38.) The doctrine applies to mixed questions of law and fact. (*See, Matter of McGrath v Gold*, 36 NY2d 406, 411.)

That the Family Court and disciplinary proceeding involved different standards of proof does not, in this case, bar application of the doctrine, since the comparison of the burdens of proof is in petitioner's favor. (*See, e.g., People ex rel. Dowdy v Smith*, 48 NY2d 477.) In *Dowdy*, a parolee at his parole revocation hearing on charges arising out of a criminal prosecution, sought to invoke collateral estoppel as a result of his prior acquittal, which the parties agreed, was based on the defense of entrapment, which he had the burden of proving at trial by a preponderance of the evidence. At the parole revocation hearing the People had the burden of proving a parole violation by "satisfactory" evidence. The Court of Appeals held, "[H]aving succeeded under the greater relative burden, relator may now properly claim the benefit, in consequence of the application of the doctrine of collateral estoppel, of the jury's finding that his conduct was induced by entrapment." (*Supra,* at 484.)

In *People ex rel. Matthews v New York State Div. of Parole* (58 NY2d 196) the Court of Appeals made clear that *Dowdy* did not hold that in every case a dismissal or acquittal of the charges in the criminal trial would collaterally estop the Parole Board from revoking the defendant's parole on the basis of the criminal charges. The Court noted that collateral estoppel was applied in *Dowdy* because a " 'comparison of the burdens of proof [was] in the relator's favor'." (*Supra,* at 202, quoting *People ex rel. Dowdy v Smith*, 48 NY2d, *supra,* at 484.) Here, the burdens of proof are similarly favorable to petitioner. At the suppression hearing, he had the burden of establishing illegality of the seizure of the gun by a preponderance of the evidence; at the administrative hearing he had no burden. The

school authorities had the burden of establishing the reasonableness of the search by substantial evidence. Thus, since petitioner was successful on the legality of the search issue under the greater relative burden, collateral estoppel should have been applied.

The remaining question is whether the exclusionary rule should be applied to this particular school disciplinary proceeding. The Fourth Amendment secures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It has been held that "[t]he exclusionary rule is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally' and not 'a personal constitutional right of the party aggrieved'." (*Illinois v Gates*, 462 US 213, 223, quoting *United States v Calandra*, 414 US 338, 348.) Theoretically, the sanction of excluding evidence obtained in violation of the Fourth Amendment removes the incentive to disregard the citizen's rights under the Fourth Amendment and deters its breach. Whether such evidence should be excluded involves "weigh[ing] the likely social benefits of excluding [such] evidence against the likely costs", i.e., the loss of probative evidence. (*Immigration & Naturalization Serv. v Lopez-Mendoza*, 468 US 1032, 1041.)

It is now well settled that the exclusionary rule, while most commonly applied in the context of criminal proceedings, is applicable to a wide variety of civil and administrative proceedings as well. (*People ex rel. Piccarillo v New York State Bd. of Parole*, 48 NY2d 76, 81; *Matter of Finn's Liq. Shop v State Liq. Auth.*, 24 NY2d 647, *cert denied* 396 US 840.) The Court of Appeals has held that "the application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process." (*People v Drain*, 73 NY2d, *supra*, at 110.) If little or no deterrent benefit could be expected from exclusion, the court will not suppress relevant evidence. (*See, e.g., People v Arnau*, 58 NY2d 27, *cert denied* 468 US 1217; *People v Rogers*, 52 NY2d 527, *cert denied* 454 US 898.)

In *Matter of Finn's Liq. Shop v State Liq. Auth.* (24 NY2d 647, *supra*), the Court applied the exclusionary rule to evidence unlawfully seized by municipal police officers acting as agents of the State Liquor Authority. The Court held that "[t]here can be no justification for any State agency, charged with enforcement of the law, to rely, in fulfilling its function, upon the unlawful and unconstitutional acts of its agents." (*Supra*, at 662-663.)

In *Matter of Boyd v Constantine* (81 NY2d 189), the petitioner, a State Police officer, was arrested by Buffalo City police officers for the possession of marihuana, which was suppressed in the criminal proceeding after a determination that the City police had illegally seized it. When the State Police sought to admit the drugs at the petitioner's administrative hearing on the drug possession charges, he objected, unsuccessfully, on the basis of the exclusionary rule. In reinstating the determination dismissing the petitioner from the State Police, the Court of Appeals reiterated the balancing test it had articulated in *People v Drain* (73 NY2d, *supra,* at 110)—weighing the deterrent benefit to be realized by application of the exclusionary rule against the benefit of being able to use otherwise relevant evidence in the truth-finding process (81 NY2d, *supra,* at 195). It distinguished *Matter of Finn's (supra),* stating, "[N]othing in the record indicates that the Buffalo City Police were acting as agents of the Division of State Police. Thus, it cannot be said that the Division of State Police, in seeking to discipline petitioner for unlawful possession of marihuana, relied upon the unlawful and unconstitutional acts of its agents." (81 NY2d, *supra,* at 194.) Nor was there any showing that the City police officers knew, prior to the search, that the petitioner was a State Police officer. Nor could they foresee, when they conducted their search, that the petitioner would be subject to a disciplinary proceeding by the State Police. In such circumstances, the Court found little, if any, deterrent effect by precluding the State Police from using the evidence; on the other hand, the adverse impact of applying the exclusionary rule was substantial: preclusion would hinder efforts by the State Police to oust from the ranks of those entrusted to uphold the law a person who was not only untrustworthy but who had himself engaged in unlawful conduct.

Applying the balancing test to the facts of this case, we find that the deterrent effect of excluding the gun evidence far outweighs the benefit to be gained by using the evidence. The illegal search was conducted by the same entity, i.e., the school authorities, or more precisely, an agent of that entity, which seeks to use the illegally obtained evidence in the disciplinary hearing. Since the party responsible for the illegal search is the same party offering the evidence the deterrence factor is compelling and is as substantial as it is direct.

Moreover, since a school security aide's first responsibility is school safety, not law enforcement, his "zone of primary inter-

est" *(United States v Janis,* 428 US 433, 458) is the school suspension hearing at which student infractions will be considered and, if found to exist, punished. If security aides are to be deterred from engaging in unlawful conduct with respect to the Fourth Amendment rights of students, they must understand that their methods of enforcing school safety rules are subject to scrutiny and that, if a student's rights have been violated, evidence illegally seized as a result of such violation will be excluded. Nor, since such proceedings are only incidental to a school security aide's primary concerns, is suppression in a juvenile delinquency or criminal proceeding a sufficient deterrent.

Finally, the benefit to be derived from the use of tainted evidence in the truth-seeking process at the administrative hearing, i.e., the student's removal from the ranks of the student body, is no greater than that which, in a criminal proceeding, is subordinated to the deterrent factor. No matter how serious the public safety concerns, if the critical evidence was illegally obtained, it cannot be used, with the result that, ofttimes the accused is set free. *(See, e.g., People v Turriago,* 219 AD2d 383.)

Since there was no competent evidence, other than the testimony about the gun, which should have been excluded, to support the suspension, the determination suspending petitioner from school for one year should have been annulled. While the period of suspension has expired, petitioner is still aggrieved. *(See, Matter of Mu Ch. of Delta Kappa Epsilon v Colgate Univ.,* 176 AD2d 11, 13.) Therefore, all references to the suspension should be expunged from petitioner's school records.

Accordingly, the order of the Supreme Court, Bronx County (David Levy, J.), entered November 15, 1994, which dismissed petitioner's article 78 petition seeking to annul respondent's determination suspending petitioner from school for one year, should be reversed, on the law, without costs or disbursements, and the petition granted.

ROSENBERGER, ELLERIN and MAZZARELLI, JJ., concur.

Order, Supreme Court, Bronx County, entered November 15, 1994, reversed, on the law, without costs or disbursements, and the petition seeking to annul respondent's determination granted.