OPINION OF THE COURT
 

 Bellacosa, J.
 

 The Chancellor and President of the New York City Board of
 
 *664
 
 Education and the Superintendent of Bronx High Schools appeal from an Appellate Division ruling in a CPLR article 78 proceeding that nullified their actions in the underlying school matter. Student petitioner Juan C. sued them, seeking to annul a determination made, after a plenary hearing, by the Superintendent of the Bronx High Schools and affirmed by the Chancellor, that suspended the student from William Howard Taft High School for one year for carrying a gun into the school. The resolution also provided for the pupil’s continued educational needs at the Bronx Outreach Alternative Instruction Center.
 

 Supreme Court dismissed the article 78 challenge. The Appellate Division reversed and annulled the schools’ determination. Applying the doctrine of collateral estoppel, it ruled that the educational authorities were precluded from reviewing the reasonableness and legality of the seizure of the gun from the student in a school hallway. The ruling suppressing evidence, rendered in a previously dismissed Family Court juvenile delinquency proceeding, was deemed determinative. That ruling rested on the Family Court Judge’s discrediting a school aide’s testimony as to what he observed about the student in the corridor.
 

 On this key collateral estoppel aspect of this case, it should be emphasized that the Appellate Division grant of the petition to annul the educational entity’s determination rested on this core conclusion: "[t]he prerequisites for applying the doctrine have all been met: identity of parties and issues; a prior proceeding resulting in a final and valid judgment in which the party opposing the estoppel had a full and fair opportunity to litigate” (223 AD2d 126,130). The appeal is before this Court as of right pursuant to CPLR 5601 (b) (1).
 

 The focus of this decision is entirely on the threshold question whether the doctrine of collateral estoppel applies to foreclose the education officials from separately determining the suspension and reassignment of the then-15-year-old student from whom the gun was seized in 1992 in his high school. We are satisfied that the collateral estoppel doctrine does not automatically block or limit the discrete action and remedial alternatives available to the educational entity.
 

 The fact that the gun had been suppressed in a prior Family Court juvenile delinquency proceeding, instituted and prosecuted by the presentment agency in the name of the New York City Corporation Counsel pursuant to distinctively delegated
 
 *665
 
 special authorization in Family Court Act § 310.1, is not preclusive here. Thus, the otherwise sustainable findings and determination should not be disturbed in this proceeding. A reversal and reinstatement of the Supreme Court judgment dismissing the student’s CPLR article 78 proceeding is in order, and because the case is resolvable on that sole basis, we reach no other issue.
 

 L
 

 The testimony before the Board of Education Hearing Officer showed these salient facts about this case. On December 8, 1992, a school security aide at William Howard Taft High School, Luis Mujica, observed Juan C. walking towards him in the hallway. The security aide suspected the presence of a gun because he noticed something resembling the handle of a gun pulling down the left side of the student’s jacket, which was halfway closed. As the student passed, Mujica grabbed at him and the student then moved to avoid the aide. A hallway chase ensued, ending with Mujica catching Juan C. and feeling the gun on his person. Another school security aide arrived and removed the gun from the jacket. A third school security officer entered the scene and handcuffed the student, who was then taken to the Dean’s office. The youngster was later questioned by a police officer, who gave the student his custodial interrogation rights. Juan C. admitted taking the gun into the school but explained that he had found it in a park.
 

 In Bronx County Family Court, Juan C. was charged with criminal possession of a weapon. After a suppression hearing, at which only Mujica testified, Family Court determined, essentially on credibility grounds, that the seizure of the gun was unreasonable and in violation of constitutional standards. It thus suppressed the gun and dismissed the juvenile delinquency petition for lack of evidence. The presentment agency took no appeal.
 

 The Superintendent of the Bronx High Schools, shortly thereafter, instituted the educational disciplinary review that is the subject of this judicial proceeding and appeal. The Hearing Officer opened with a detailed explanation of the precise focus and pedagogical purpose of this distinct forum. In the framework of this hearing and with additional witnesses and evidence presented, the officer ultimately recommended that (1) collateral estoppel principles should not bar reexamination of the legality of the seizure of the gun for the purpose of this
 
 *666
 
 school disciplinary matter, and (2) Mujica had the initial, individualized, reasonable suspicion to believe that Juan C. possessed a gun, thus justifying the actions initiated and undertaken by the various school employees, including the eventual seizure of the weapon in the school corridor (Chancellor’s Regulations, Nos. A-432, A-441;
 
 compare, Matter of Gregory M.,
 
 82 NY2d 588, 592). The particularized findings were adopted by the schools Superintendent, who then imposed the one-year suspension and alternative school arrangement for Juan C. The Chancellor upheld the ruling on administrative appeal, specifically agreeing that the prior Family Court ruling was not preclusive against the school system which conducted its inquiry, made its findings, and addressed its special responsibilities in its separate forum
 
 (see,
 
 Chancellor’s Regulations, No. A-441).
 

 Up to that point in the administrative process, New York City school personnel were in complete control of the pedagogical proceeding; they were the only official participants. The office of the New York City Corporation Counsel, which had presented and controlled the juvenile delinquency proceeding in Family Court pursuant to uniquely delegated responsibility under the Family Court Act, had no evident function in the subsequent school disciplinary examination
 
 (see,
 
 Family Ct Act §§ 254, 254-a, 301.2 [12];
 
 see also,
 
 Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29-A, Family Ct Act § 310.1, at 328). The reason for this discrete division of responsibility is that the Board of Education is an entity with an authority source and base that is distinctively separate from other usual City operations and powers and specifically distinct from the Corporation Counsel’s role under Family Court Act direction
 
 (id.; see also,
 
 Education Law arts 52, 52-A).
 

 IL A.
 

 Appellants were not parties to the Family Court proceeding. They cogently demonstrate that the collateral estoppel doctrine does not apply here to make the Family Court’s suppression ruling preclusive because no identity of parties and no full and fair opportunity to contest issues affecting the distinct pedagogical responsibilities were present or involved in the Family Court setting or adjudication. The contention continues that they, singly and as a collective educational entity, were never parties in any sense in the Family Court proceeding, any more than the Corporation Counsel was a party or even the legal representative in the school disciplinary track in any of
 
 *667
 
 ficial role or participation — until later down the judicial review litigation route. Therefore, appellants contend, and we agree, that the educational entity did not share actual or functional identity as parties and did not receive in the Family Court setting any opportunity — no less a full and fair one — to contest the issues suffusing its unique educational responsibilities, especially as they are so prominently affected by the presence of the gun on school premises and the manner in which it was perceived and seized by school personnel.
 

 The equitable doctrine of collateral estoppel is "intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it”
 
 (Kaufman v Lilly & Co.,
 
 65 NY2d 449, 455). It "is grounded on concepts of fairness and should not be rigidly or mechanically applied”
 
 (D’Arata v New York Cent. Mut. Fire Ins. Co.,
 
 76 NY2d 659, 664). Its essential ingredients are: "[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination”
 
 (Kaufman v Lilly & Co., supra,
 
 at 455, citing
 
 Gilberg v Barbieri,
 
 53 NY2d 285, 291). Significantly, "[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action”
 
 (Kaufman v Lilly & Co., supra,
 
 65 NY2d, at 456).
 

 In general,, "a nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation”
 
 (D’Arata v New York Cent. Mut. Fire Ins. Co., supra,
 
 76 NY2d, at 664;
 
 see also, People v Roselle,
 
 84 NY2d 350). This constitutes a form of privity; however, "the term privity does not have a technical and well-defined meaning”
 
 (Watts v Swiss Bank Corp.,
 
 27 NY2d 270, 277). Rather, it "is an amorphous concept not easy of application”
 
 (D’Arata v New York Cent. Mut. Fire Ins. Co., supra,
 
 at 664), and "includes those who are successors to a property interest, those who control an action although not formal par
 
 *668
 
 ties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action”
 
 (Watts v Swiss Bank Corp., supra,
 
 27 NY2d, at 277). Importantly, "all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation”
 
 (id.).
 

 To round out the discussion of generally relevant authorities, we also note the collateral estoppel doctrine in its criminal or quasi-criminal context. Although collateral estoppel is "a common-law doctrine rooted in civil litigation,” the principle has some limited overlap into criminal matters
 
 (People v Aguilera,
 
 82 NY2d 23, 29). Notably, however, "collateral estoppel is not as liberally applied in criminal prosecutions as in civil actions”
 
 (People v Acevedo,
 
 69 NY2d 478, 485, citing
 
 People v Goodman,
 
 69 NY2d 32, 37;
 
 People v Plevy,
 
 52 NY2d 58, 64;
 
 People v Berkowitz,
 
 50 NY2d 333, 344-346;
 
 People v Reisman,
 
 29 NY2d 278, 285,
 
 cert denied
 
 405 US 1041). Rather, "[w]e have actually employed the doctrine only once in a criminal case — to preclude the People from relitigating the fact of defendant’s alleged presence at a crime scene”
 
 (People v Aguilera, supra,
 
 82 NY2d, at 29, citing
 
 People v Acevedo,
 
 69 NY2d 478,
 
 supra).
 
 This is so, because "in criminal prosecutions, where defendant’s liberty interest is at stake, the preeminent concern is to reach the correct result, and hence the policies underlying issue preclusion are different”
 
 (People v Aguilera, supra,
 
 82 NY2d, at 30 [citations omitted]).
 

 II B.
 

 We turn our attention now especially to the identity of party aspect of the doctrine. Generally, a party appearing in an action in one capacity is not bound by the doctrine of collateral estoppel in a subsequent action in which the party appears in a different capacity
 
 (see, e.g., Green v Santa Fe Indus.,
 
 70 NY2d 244, 254;
 
 see also,
 
 Restatement [Second] of Judgments § 36 [2], at 359).
 

 The situation presented in the instant case is quite distinctive because of the nature, particular function and purpose of the two governmental entities and the discrete issues in each matter. Since "the source of authority of two government entities is not dispositive of whether they are in privity” for collateral estoppel purposes
 
 (United States v Romero,
 
 836 F2d 39, 43,
 
 cert denied 488
 
 US 817), both the circumstances of the actual relationship between the two agencies as demonstrated by the record and their statutory relationship are relevant
 
 (see, e.g.,
 
 
 *669
 

 Matter of Home of Histadruth Irvith v State Facilities Dev. Corp.,
 
 114 AD2d 200, 205). Consequently, "[i]n some circumstances, a prior determination that is binding on one agency and its officials may not be binding on another agency and its officials” (Restatement [Second] of Judgments § 36, comment
 
 f,
 
 at 364). To be sure, "[i]f the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action” (Restatement [Second] of Judgments, § 36, comment
 
 f).
 

 Thus, despite the respective appearances of the Corporation Counsel in the juvenile delinquency forum and in the eventual article 78 judicial proceeding challenging the Chancellor’s educational determination, the Corporation Counsel’s roles in the two procedures were functionally discrete and traced to very different source lines of authority. The mere fact that the Corporation Counsel may eventually become the Chancellor’s lawyer for ultimate litigation purposes — as in this article 78 proceeding and appeal — does not automatically and retrospectively satisfy the party identity prerequisite demanded for collateral estoppel to have its powerful issue preclusive effect. We find no support or authority or analysis for the proposition that would allow that consequence to flow out of the juvenile delinquency proceeding and its legal management. The Family Court role was plainly in contradistinction to the separate educational disciplinary proceeding and forum that the Corporation Counsel entered after it was administratively complete in all respects, including the Chancellor’s administrative appeal.
 

 Concomitantly, too, the Corporation Counsel, as presentment agency, played no role whatsoever in school safety or education and had no representational or other responsibility at any stage of the educational forum or administrative determination level. Rather, the core responsibility to provide a secure and appropriate educational environment for all students and school personnel, and all associated procedural offshoots of that function, were reposed in the Chancellor and his associated school officials. Thus, the educational entity’s overarching function in a school suspension and relocation proceeding was to provide for and safeguard all students’ educational needs, including that of the offending student. It did so in the very proceeding and determination under review in this article 78 challenge.
 

 
 *670
 
 Our conclusion regarding the distinction between the role of Corporation Counsel in each of the two matters here is buttressed by the decision in
 
 People v Roselle
 
 (84 NY2d 350,
 
 supra).
 
 There, this Court determined that the doctrine of collateral estoppel did not preclude the criminal prosecution of a defendant for the same incident which resulted in a Family Court determination that defendant neglected a three-year-old child
 
 (id..,
 
 at 352). We reasoned that "[t]he orientation of Family Court is rehabilitative, directed at protecting the vulnerable child, as distinct from the penal nature of a criminal action which aims to assess blame for a wrongful act and punish the offender”
 
 (id.,
 
 at 355). The Court concluded that although the Family Court Act requires the District Attorney (or in New York City, the Corporation Counsel), to be named as a necessary party to certain Family Court Act article 10 child protective proceedings, a subsequent criminal action based on the same incident by the District Attorney was not foreclosed
 
 (id.,
 
 at 352-353, 355-356). An opposite conclusion would be "contrary to our jurisprudence” because the passive function of the District Attorney in the protective proceeding is significantly distinct and separate from its plenary role in the criminal action
 
 (id.,
 
 at 356;
 
 see also, Brown v City of New York,
 
 60 NY2d 897, 898). Conversely, this analysis and articulation help pave the way to the result and rationale we espouse in deciding that the Family Court ruling in this case should not preclude the school system examination and determination to serve its purposes and responsibilities.
 

 That the Corporation Counsel appeared in different capacities in the Family Court and article 78 proceedings is also underscored by article 3 of the Family Court Act. The Family Court Act provides that "[i]n all cases involving abuse * * * outside the city of New York, the appropriate district attorney shall be a necessary party to the proceeding” (Family Ct Act § 254 [b];
 
 see, People v Roselle, supra,
 
 at 355-356). Notably, the numerous local school boards throughout this State are unquestionably distinct from local District Attorneys, who are charged with the prosecution of many juvenile delinquency cases in Family Courts. It would be unsupportable and too high a jurisprudential price to pay to use the doctrine of collateral estoppel to bar all such local school boards from exercising their educational, community-wide responsibility, independently and distinctively from the control and consequences of the actions of the local District Attorneys, flowing from their individualized, narrower and distinctive Family Court juvenile
 
 *671
 
 delinquency responsibilities. Thus, we discern no precedential or policy justification for concluding that a different set of rules should govern when Family Court proceedings, brought by the Corporation Counsel pursuant to Family Court mandate, happen to occur in New York City.
 

 Importantly, under the statutory scheme of article 3 of the Family Court Act, the Corporation Counsel is not acting as the chief legal officer of the New York City government. Rather, that officer is designated by State statute as the presentment agency for all juvenile delinquency charges, except designated felony acts or criminal proceedings removed to the Family Court from the criminal courts (see, Family Ct Act §§ 254, 254-a, 301.2 [12]). The effect of the designation as the presentment agency under article 3 is a legislative delegation of the exclusive prosecutorial function for the criminal acts of juveniles committed within the appropriate territorial jurisdiction.
 

 Under Family Court Act § 310.1 (2), only a presentment agency may originate a juvenile delinquency proceeding, by the filing of a petition. That section makes the presentment agency "the actual petitioner [and] confers full * * * prosecutorial authority upon the presentment agency” (Sobie, Practice Commentary, McKinney’s Cons Law of NY, Book 29A, Family Ct Act § 310.1, at 328). The presentment agency is given exclusive authority to screen cases, refuse to file petitions and decide whether to take appeals
 
 (id.).
 
 The presentment agency’s exclusive status as petitioner was adopted to avoid having its authority "seriously compromised if the petition remained the instrument of a private aggrieved party”
 
 (id.).
 

 Thus, the statutory framework expressly negates any interpretation that school officials possess a legally recognized role or right to exercise control over or even participate in any meaningful way in the presentation of and decisions affecting a juvenile delinquency proceeding. Everything in theory and practice points the other Way. Likewise, the complete autonomy and independence of the presentment agency in the statutory scheme negates any inference that its role was to represent the interest of the school officials in the delinquency proceeding prosecution
 
 (Watts v Swiss Bank Corp.,
 
 27 NY2d 270,
 
 supra).
 

 Additionally, in
 
 Brown v City of New York
 
 (60 NY2d 897,
 
 supra),
 
 this Court concluded that issue preclusion did not apply against the defendant City of New York in a civil action for
 
 *672
 
 false arrest, false imprisonment and assault based on the dismissal of a criminal charge against the defendant in a criminal action for resisting arrest, prosecuted by the Queens District Attorney
 
 (id.,
 
 at 898). The Court determined that the Queens District Attorney and the City of New York were separate entities and did not "stand in sufficient relationship to apply the doctrine”
 
 (id.,
 
 at 898-899;
 
 see, People v Roselle,
 
 84 NY2d 350,
 
 supra).
 
 The lack of "sufficient relationship” has been applied to defeat the interposition of collateral estoppel in a variety of factual constructs, most not even close to being as distinctive as the instant circumstance between the presentment agency and the New York City Schools Chancellor
 
 (see, e.g., Matter of Saccoccio v Lange,
 
 194 AD2d 794, 795;
 
 Doe v City of Mount Vernon,
 
 156 AD2d 329;
 
 People v Morgan,
 
 111 AD2d 771, 772;
 
 see also, Matter of New York Site Dev. Corp. v New York State Dept. of Envtl. Conservation,
 
 217 AD2d 699, 700;
 
 Matter of Mason v Rothwax,
 
 152 AD2d 272, 285,
 
 lv denied
 
 75 NY2d 705).
 

 With the guidance and direction of these many authorities, we conclude that these appellants did not share identity as parties, were not allied with the special role of the Corporation Counsel as presentment agency, and were not afforded any full or fair opportunity to litigate their concerns in the Family Court juvenile delinquency proceeding. They are not in legal or practical privity with the presentment agency; they had no legal or functional party status in the Family Court proceeding; petitioner Juan C. in this proceeding wholly failed to meet his burden here for invoking collateral estoppel under our settled precedents; and the Chancellor sufficiently met his corresponding burden that the school officials were not afforded a full and fair opportunity to effectuate their pedagogical interests and responsibilities. Additionally, the fact that the Board had no role to effect an appeal of the Family Court suppression determination illustrates its essential and functional lack of opportunity to litigate issues that relate to its responsibilities (se
 
 e, e.g., Johnson v Watkins,
 
 101 F3d 792, 795, citing
 
 People v Sailor,
 
 65 NY2d 224, 229,
 
 cert denied
 
 474 US 982; Restatement [Second] of Judgments § 28 [1
 
 \,United States v Davis,
 
 906 F2d 829, 835). In law, purpose and actual practice, the Chancellor’s and the Board’s procedures and wider educational community concerns are functionally and fundamentally discrete and independent from the presentment agency and that office’s uniquely delegated and described responsibility in a juvenile delinquency proceeding in Family Court, such as was presented here.
 

 
 *673
 
 Ill
 

 Despite abundant, cogent and integrated authorities as pertinently applied to these facts, petitioner stresses
 
 Matter of Finn’s Liq. Shop v State Liq. Auth.
 
 (24 NY2d 647,
 
 cert denied
 
 396 US 840). There, this Court applied collateral estoppel and the exclusionary rule in State Liquor Authority (SLA) administrative proceedings to preclude evidence unlawfully seized by municipal police officers. The Court determined the officers acted as agents of the Liquor Authority. We rejected the SLA’s assertion that it had no association with the District Attorney and, thus, should not have been precluded by the determination in the prior criminal action
 
 (id.,
 
 at 662). Refusing to permit the SLA to reexamine the issue of the legality of the seizure previously decided by the criminal court, the Court reasoned that "[although the two agencies may be treated, for other purposes, as independent parties, this can hardly be the case where they are both seeking to use the same police officials as their agents to gather evidence”
 
 (id.).
 
 Therefore, the Court concluded, "[i]f the search and seizure was unconstitutional to the extent that it was performed for the benefit of the prosecutor, the same act could hardly be considered lawful for the Authority’s purposes”
 
 {id.).
 

 We are frank to acknowledge that some of that language is facially problematic here because the hall monitor’s actions and testimony constitute the same core evidence advanced in each forum. Importantly, however, the analysis of identity of parties and issues involves a case-by-case determination
 
 (see, Watts v Swiss Bank Corp.,
 
 27 NY2d 270, 277,
 
 supra).
 
 In
 
 Finn,
 
 the Court found an alignment of interests based on the sharing of agents by the parties — the police officials used to gather evidence.
 
 Finn
 
 is, therefore, critically distinguishable in that here there was no alliance, affiliation, privity or identity between the presentment agency and the Chancellor and other school officials. The security aide here hardly constitutes a "shared agent.” Additionally, Mujica was a mere witness in both the Family Court matter and the educational forum. The Board of Education proceeding was supported by evidence and witnesses beyond him, and by discrete, supportable findings. Finally, the nature of a quasi-law enforcement proceeding, such as a State Liquor Authority violation hearing, and the fact that the State Liquor Authority works with State law enforcement officers creates a sufficiently distinguishable factual scenario raising the special concerns that drove the
 
 Finn
 
 analysis. The security aide and other participating school personnel under these cir
 
 *674
 
 cumstances are functionally different from ordinary and usual law enforcement officers. That is a key distinction from
 
 Finn.
 

 A few words are also necessary about
 
 People ex rel. Dowdy v Smith
 
 (48 NY2d 477) because of the reliance given it by Juan C. and the Appellate Division. In
 
 Dowdy,
 
 this Court held that "[a] prior acquittal based on the defense of entrapment in a criminal proceeding collaterally estops the Board of Parole from revoking parole on the basis of the transactions proved and admitted in the criminal action”
 
 (id.,
 
 at 479-480;
 
 see also, People ex rel. Piccarillo v New York State Bd. of Parole,
 
 48 NY2d 76, 83). The Court determined in
 
 Dowdy
 
 that there was an identity of parties, reasoning that "the People as prosecutors in the criminal action stood in sufficient relationship with the Division of Parole in the parole proceeding to meet the requirements of the doctrine in this respect”
 
 (id.,
 
 at 482;
 
 contrast, People v Roselle, supra).
 

 Dowdy
 
 and
 
 Piccarillo
 
 are, however, likewise readily distinguishable from the instant case. Accepting, again, that the identity of parties determination must be made on a case-by-case basis
 
 (Watts v Swiss Bank Corp.,
 
 27 NY2d 270, 277,
 
 supra),
 
 the cases are substantially and significantly distinguishable in that their holdings are based on the unique relationship between the Division of Parole and the People, qua prosecutors. That inherent nexus is entirely absent here. Additionally, these cases involved a quasi-law enforcement proceeding (a parole violation), arising in an agency setting that customarily functions directly with State law enforcement officers. That is demonstratively not so for school personnel.
 

 IV,
 

 The flow of these authorities and rubrics on the instant juridical matrix of parties leads us confidently to the conclusion that collateral estoppel should not be deployed to handicap or foreclose the appropriate officials of the New York City Board of Education from exercising their responsibilities and prerogatives, as they did here. A governmental entity (this independent school system) was not afforded the necessary full and fair participatory role within the framework and jurisdiction of the distinctly quasi-criminal, rehabilitative forum and proceeding conducted and controlled exclusively by a legislatively delegated special agent (the Corporation Counsel as presentment agency). Also, the presentment agency did not represent the school officials in any stage of their proceeding at that forum level. Thus, the Chancellor and the other school officials,
 
 *675
 
 in law and fact, demonstratively lacked the requisite "sufficient relationship” or privity or uniformity of interest with the presentment agency in the juvenile delinquency proceeding. The latter official, moreover, has an entirely different purpose and source of authority for its quasi-prosecutorialrehabilitative role, as contrasted to the specially oriented pedagogical-rehabilitative one of the school system in relating to the problem with which it was confronted in this set of circumstances.
 

 In sum, because indispensable ingredients of the collateral estoppel doctrine are plainly lacking here, that equitable doctrine should not block and interdict the independent inquiry and determination of the educational authorities. Moreover, because the record evidence supports the determination reached by the Chancellor and his affiliated school officials, we reverse and dismiss the article 78 judicial proceeding.
 

 It should be emphasized, however, that while we uphold the action of the school authorities in dealing with this offending student, we should not lose sight of a seeming paradox that these same school authorities must simultaneously exemplify, honor and fulfill their constitutional and pedagogical obligations by respecting the rights of the many thousands of law-abiding students, yearning to learn about school subjects and life in society (see, Cardozo, The Paradoxes of Legal Science, in Selected Writings of Benjamin Nathan Cardozo, at 251 [Hall ed 1947]; see
 
 also,
 
 Bellacosa,
 
 Benjamin N. Cardozo: The Teacher,
 
 47th Cardozo Lecture, vol 3, Memorial Lectures, Assn of Bar of City of NY, Nov. 9, 1994, at 1594, 1612). The natural and inherent tension in trying to satisfy these complementary responsibilities, goals and values — that everyone should cherish highly in our law-governed society — is real and difficult of achievement; yet the challenge is worthy of all our best efforts.
 

 On a policy overview, the courts should be mindful not to incidentally compromise the independence of the authority of the school system of New York City, because such an inference could inappropriately affect pedagogical prerogatives. We caution, on the other hand, that the recognition of the value of independence and the inapplicability of the collateral estoppel doctrine to automatically bar use of evidence in this instance and in this educational proceeding and forum in no way invests the Chancellor and school officials or employees and their actions with immunity from appropriate scrutiny of the Judicial Branch when circumstances not now before us may warrant. The courts should remain vigilant in encouraging incentives
 
 *676
 
 that guarantee, first, within the educational apparatus itself, respect, high regard, training, proper supervision and sanctions, and, second, among all responsible entities, compliance with constitutional standards and safeguards. School officials and employees in their dealings with the pupils placed in their responsible and temporary charge should be held to no lesser standards of high conduct and high purpose.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.