Manuel RODRIGUEZ, Plaintiff–
Appellant,

v.

CITY OF NEW YORK, Christopher
Vadis, Police Officer (shield no.
11915); John Does 1 & 2, in their
individual and official capacities as
police officers employed by the City of
New York; Oscar Del Valle, Police
Officer, Defendants–Appellees.

Docket No. 00–9415.

United States Court of Appeals,
Second Circuit.

Feb. 25, 2002.

Andrew F. Plasse, New York, NY, for Appellant.

Michael D. Hess, Corporation, Counsel for the City of New York, New York, NY, for Appellee.

Present SACK, B.D. PARKER, and GIBSON,* Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of October 2, 2000 be, and it hereby is, AFFIRMED.

Manuel Rodriguez appeals an October 2, 2000 judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*), dismissing on a Fed R. Civ. P. 56(c) motion for summary judgment his 42 U.S.C. § 1983 claims of false arrest and Fourth Amendment violations. We affirm.

On July 26, 1997, two uniformed officers patrolling in Brooklyn were informed that a man was on a roof of a building at the corner of Myrtle Avenue and Wilson Avenue. They approached the building, and saw a man on the roof yelling that other men with guns were trying to kill him. They allege that in trying to gain access to the roof, they rang several doorbells, then began kicking the door.

Rodriguez, the owner and a resident of that building, was in a back office conducting business. He heard a "loud noise like somebody ... breaking [into] the build-

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

ing." Rodriguez asserts that he approached the front door and looked out to see "people with a hammer banging the door." He claims then to have retreated to collect his gun from his office and then to have returned to the door. Rodriguez denies pointing the gun at the police officers. Contradicting his testimony to that effect, the officers testified that he approached the door the second time with a pistol pointed at them through a window in the door. Rodriguez was subsequently arrested by other officers and charged with Menacing in the Second Degree, *see* N.Y. Penal L. § 120.14 (McKinney 2000), and two counts of Criminal Possession of a Weapon in the Fourth Degree, *see* N.Y. Penal L. § 265.01 (McKinney 2000). The charges were adjourned contemplating dismissal on August 25, 1997.

On April 9, 1998, a hearing officer of the New York City Police Department License Division held a hearing. At the conclusion thereof, he revoked Rodriguez's pistol license based on his "behavior during the incident, and his attempts to explain it during the hearing." Contrasting the testimony of Rodriguez and the officers, the hearing officer "[did] not credit the [plaintiff's] explanation of this incident and believe[d] that the Police Officers [were] telling the truth." Specifically, the hearing officer noted that Rodriguez had "denied that he unholstered his firearm and pointed it at the officers."

■ Findings from the license revocation hearing have collateral estoppel effect in the district court proceedings in the case before us. "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (internal punctuation and quotation marks omitted). All predicates for issue preclusion are met. The hearing officer acted in a judicial capacity, hearing witnesses, permitting cross-examination of witnesses, and issuing a written decision subject to judicial review that contained findings of fact. The hearing officer's findings are entitled then to "the same preclusive effect to which it would be entitled in the State's courts." *Id.*

■ "Under New York law, issue preclusion ... applie[s] when the identical issue necessarily must have been decided in the prior action and will be decisive in the present action and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Doe v. Pfrommer*, 148 F.3d 73, 79 (2d Cir.1998) (citing *Juan C. v. R.C. Cortines*, 89 N.Y.2d 659, 667, 679 N.E.2d 1061, 1065, 657 N.Y.S.2d 581, 585 (1997)). Here, there are identical, material issues in the license revocation hearing and this proceeding because the hearing officer found Rodriguez's "behavior during th[e] incident" determinative.

■ Further, New York courts require the agency's determination be "quasi-judicial." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825, 467 N.E.2d 487 (1984). An administrative agency determination is quasi-judicial under New York law if "rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Id.*, 62 N.Y.2d at 499, 478 N.Y.S.2d at 825, 467 N.E.2d 487. Even though not required by law, a license revocation hearing is within the authority of the Licensing Division, and must be quasi-judicial in character once offered. Thus, issue preclusion applies.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law.... [P]robable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when an arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon,* 986 F.2d 646, 649–50 (2d Cir.1993) (citation omitted).

The crime for which Rodriguez was arrested and charged, menacing in the second degree, requires that the defendant "intentionally place[ ] ... another person in reasonable fear of physical injury ... or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol ... or other firearm." N.Y. Penal L. § 120.14(1) (McKinney 1999). The hearing officer found that Rodriguez pointed his pistol at the police officers and that he lied when he claimed that the gun had been holstered. The hearing officer further "believe[d] that the Police Officers [were] telling the truth." Thus, Rodriguez pointed a gun at the police officers, fulfilling all the elements of Menacing in the Second Degree and furnishing the officers with probable cause.

Additionally, the police officers were qualifiedly immune. An officer has qualified immunity to make an arrest "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997). Even if the officers in this case did not

have "actual probable cause ... they certainly had 'arguable' probable cause, and accordingly, it was objectively reasonable for the[m] to believe that probable cause existed." *Id.* at 103. The officers saw Rodriguez appear once at the door, disappear, and were also aware of a possibility that someone on the roof had been threatened with a firearm. Under these circumstances, the officers' perception of risk was objectively reasonable. Thus, even if the officers lacked probable cause, their actions were protected by qualified immunity.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.