Matter of Anonymous v New York State Justice Ctr. for The Protection of People With Special Needs (2018 NY Slip Op 07996)





Matter of Anonymous v New York State Justice Ctr. for The Protection of People With Special Needs


2018 NY Slip Op 07996


Decided on November 21, 2018


Appellate Division, Third Department


Garry, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

526121

[*1]In the Matter of ANONYMOUS, Petitioner,
v
NEW YORK STATE JUSTICE CENTER FOR THE PROTECTION OF PEOPLE WITH SPECIAL NEEDS et al., Respondents.

Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Daren J. Rylewicz, Civil Service Employees Association, Inc., Albany (Jennifer C. Zegarelli of counsel), for petitioner.
Barbara D. Underwood, Attorney General, Albany (Brian D. Ginsberg of counsel), for respondents.



OPINION AND JUDGMENT
Garry, P.J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Justice Center for the Protection of People with Special Needs denying petitioner's request to amend and seal a report of abuse.
Petitioner was formerly employed by the Office for People with Developmental Disabilities (hereinafter OPWDD) as a direct support assistant in a residential group home for individuals with developmental disabilities. In September 2014, five individuals resided in the facility, and petitioner was assigned as the live-in overnight staff member. One night while petitioner was on duty, an assistant house manager came to the facility to conduct a fire drill, and she remained for about an hour. Later that day, the assistant house manager returned to the facility for her regular shift. One of the residents told her that he had smoked marihuana provided by petitioner after the fire drill. He later added that petitioner had smoked marihuana with him. The next day the resident was tested for marihuana, with a positive result. Petitioner denied the claims. On the advice of her union, she declined to undergo a drug test.
OPWDD served petitioner with a notice of discipline charging her with misconduct and/or incompetence and seeking her termination on the grounds that she had provided marihuana to the resident and had smoked marihuana while on duty at the facility. A disciplinary hearing was conducted before an arbitrator, at which OPWDD was represented by respondent Justice Center for the Protection of People with Special Needs. Petitioner, the resident and the assistant house manager were among the witnesses. In May 2015, the arbitrator found that OPWDD had failed to sustain its burden to prove either charge by a preponderance of the evidence and, accordingly, that petitioner was not guilty of the charges.[FN1]
Meanwhile, immediately after the incident, the Justice Center received a report alleging that petitioner had engaged in conduct constituting abuse and neglect of a person receiving services under her care by distributing marihuana to the resident and by using marihuana at the facility while on duty. Following an investigation, the Justice Center issued a report that substantiated both findings as category one incidents of abuse (see Executive Law § 552 [1]; Social Services Law §§ 488 [1] [a]; 493 [4] [a]). Petitioner requested an amendment of the substantiated report, seeking to have the designation changed to unsubstantiated and the matter sealed (see Social Services Law § 494). The request was denied and the matter was referred for a hearing before an Administrative Law Judge (hereinafter ALJ). At the outset of the hearing, petitioner moved for an order admitting the arbitrator's opinion and award into evidence and precluding the Justice Center from relitigating the factual issues decided therein, on the basis of collateral estoppel. The Justice Center opposed the application, and the ALJ denied it.
In this second hearing, petitioner testified but the resident did not. The ALJ then issued a recommended decision finding that the Justice Center had established by a preponderance of the evidence that petitioner had provided marihuana to the resident and had smoked it with him. The Director of the Administrative Hearings Unit thereafter issued a final determination denying petitioner's request for amendment of the substantiated report, and directing her name to be permanently placed on the Vulnerable Person's Central Register staff exclusion list (hereinafter the VPCR) (see Social Services Law § 495). Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination, asserting that the ALJ erred in failing to apply the doctrine of collateral estoppel and that his decision was not supported by substantial evidence. Supreme Court transferred the matter to this Court (see CPLR 7804 [g]).
"Collateral estoppel is a flexible doctrine that 'precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity'" (Weston v Cornell Univ., 116 AD3d 1128, 1129 [2014], quoting Buechel v Bain, 97 NY2d 295, 303 [2001]; see Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). The purposes served by the doctrine are to "prevent[] repetitious litigation of disputes which are essentially the same" and to avoid inconsistent results (D'Arata v [*2]New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 666 [1990]; see Buechel v Bain, 97 NY2d at 303; Wen Mei Lu v Wen Ying Gamba, 158 AD3d 1032, 1034 [2018]). Collateral estoppel applies to arbitration proceedings, and when the doctrine's requirements are satisfied, "[an] arbitrator's factual findings must be accorded collateral estoppel effect" (Matter of Mordukhayev [Commissioner of Labor], 104 AD3d 1005, 1006 [2013]; see Hagopian v Karabatsos, 157 AD3d 1020, 1022 [2018]).
Here, the Justice Center concedes that the issues of fact and credibility that are decisive in the current proceeding — that is, whether petitioner gave marihuana to the resident and whether she smoked it at the facility — are identical to those that were resolved in petitioner's favor in the disciplinary proceeding (see e.g. Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349-350 [1999]; Matter of Terry v County of Schoharie, 162 AD3d 1344, 1346 [2018]). Nevertheless, the Justice Center argues that it was not precluded from relitigating those issues because it was neither a party to the previous proceeding nor in privity with a party.
"[Privity] is an amorphous concept not easy of application" (Matter of Juan C. v Cortines, 89 NY2d 659, 667 [1997] [internal quotation marks and citation omitted]), and determining whether it exists requires "a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation" (Evergreen Bank v Dashnaw, 246 AD2d 814, 816 [1998]; accord Huntington Natl. Bank v Cornelius, 80 AD3d 245, 248 [2010], lv denied 16 NY3d 708 [2011]; see D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d at 664; Watts v Swiss Bank Corp., 27 NY2d 270, 277 [1970]). As pertinent here, privity may be found when a nonparty to a previous proceeding either had control over that proceeding or when "the connection between the parties [is] such that the interests of the nonparty can be said to have been represented in the prior proceeding" (Green v Santa Fe Indus., 70 NY2d 244, 253 [1987]; see Buechel v Bain, 97 NY2d at 304).
The Justice Center contends that, in its role as counsel to OPWDD, it did not have sufficient control over the disciplinary proceeding to be in privity with OPWDD, because the two agencies had an ordinary attorney-client relationship. Thus, the Justice Center asserts that it was the role of OPWDD, as the client, to control major litigation decisions. However, an attorney may be found to be in privity with the parties that he or she represents when the particular circumstances otherwise satisfy the requirements of collateral estoppel (see Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 122-126 [2008]). Notably, in order to meet her burden of proof on the issue of privity (see generally Buechel v Bain, 97 NY2d at 304), petitioner was not required to establish that the Justice Center had absolute control over the disciplinary proceeding, to the exclusion of OPWDD. On the contrary, she was required to demonstrate that "there was participation amounting to a sharing in control of the [disciplinary proceeding]" — an analysis in which "no single fact is determinative but all the circumstances must be considered" (Watts v Swiss Bank Corp., 27 NY2d at 277; accord Matter of Home of Histadruth Ivrith v State of N.Y. Facilities Dev. Corp., 114 AD2d 200, 205 [1986]).
In determining whether shared control or shared interests were adequately revealed to support a finding of privity between OPWDD and the Justice Center, we note at the outset that OPWDD did not select the Justice Center as its attorney — an indicator of control that would ordinarily be exercised by a client. Instead, OPWDD appeared through the Justice Center pursuant to the Justice Center's statutory obligation to "represent[] the state in all administrative hearings and other administrative proceedings relating to discipline of state employees and adjudication of individuals charged with having committed or found to have committed abuse or neglect" (Executive Law § 553 [1] [c] [emphasis added]). More significantly, the record and the [*3]relevant legislation do not indicate that the Justice Center's role in the disciplinary proceeding was similar to that of an ordinary attorney, who typically acts as a disinterested advocate with the purpose of representing the interests of his or her client rather than his or her own. Instead, the Justice Center shared interests with OPWDD in the disciplinary proceeding stemming from its fundamental statutory obligation to "protect[] . . . vulnerable persons who reside in or receive services from [state-operated] facilities" and "assur[e], on behalf of the state, that vulnerable persons are afforded care that is of a uniformly high standard" (Executive Law § 551 [2] [a], [b]; see Social Services Law § 488 [4] [a]). The Justice Center directly served these purposes by participating as counsel in the disciplinary proceeding conducted by OPWDD pursuant to its governing regulations and the pertinent collective bargaining agreement to determine whether petitioner should be terminated from her employment working with vulnerable persons (see 14 NYCRR 633.7 [a] [2] [i]; [c] [7]). That relief corresponds with the Justice Center's purposes in the current proceeding, albeit on a larger scale. The retention of petitioner's name on the VPCR precludes her from holding any state employment involving interaction with persons with special needs, and thus necessarily requires the termination of her employment in the group home (see Social Services Law § 493 [5] [a]; see also Matter of People v Applied Card Sys., Inc., 11 NY3d at 124).
The similarity in the interests and purposes of OPWDD and the Justice Center is further demonstrated by the agencies' intertwined statutory and regulatory roles and responsibilities. The Justice Center is required by statute to develop the code of conduct that governs OPWDD employees such as petitioner who regularly work with vulnerable persons in facilities like the group home at issue here (see Executive Law § 554 [1]; 14 NYCRR 633.7 [c]). This statutory requirement reveals the shared interest of the two agencies in protecting vulnerable persons and ensuring that they receive a high quality of care by, among other things, requiring that the code of conduct include provisions governing the responsibilities of OPWDD employees "to support the emotional, physical and personal well-being of the vulnerable persons they serve, including their protection from abuse and neglect" (Executive Law § 554 [2] [a]). The Justice Center is required to include enforcement provisions in the code of conduct, and OPWDD must enforce the code according to these provisions (see Executive Law § 554 [1]; 14 NYCRR 633.7 [c] [7]).
The interrelationship between the interests and purposes of OPWDD and the Justice Center is further revealed in the events that led up to the two proceedings involving petitioner. For example, the OPWDD form that was used to report the incident, as required by 14 NYCRR part 624, included a section indicating that the Justice Center had been notified and providing the date, time and identification number of the notification (see 14 NYCRR 624.5 [d]). The Justice Center's subsequent investigation of the incident was carried out by an investigator who testified that he was employed by OPWDD. The report of this OPWDD employee — described in the Justice Center's brief as a "Justice Center investigator" — served as the basis for the Justice Center's determination substantiating the findings of abuse that are at issue in this proceeding.
We reject the Justice Center's contention that applying collateral estoppel here would impermissibly "interfere with the proper allocation of authority" between the Justice Center's role as counsel for state agencies and its role as an oversight agency (Matter of Juan C. v Cortines, 89 NY2d 659, 669 [1997]). This assertion requires us to examine "both the circumstances of the actual relationship between the two [roles] and their statutory relationship" (id. at 668). The Justice Center's statutory obligation to protect vulnerable persons by maintaining the VPCR and its related duties to investigate reports of abuse and neglect and [*4]review substantiated findings are established by Executive Law § 552 (1). Contrary to the Justice Center's argument, the legislation that defines its powers and duties does not establish a clear demarcation between this role and the obligation to act as counsel for state agencies. Instead, Executive Law § 553 (1) (c) expressly identifies the duty to serve as counsel as one means by which the Justice Center carries out its mandate to establish and maintain the VPCR (see Executive Law § 553 [1]). In other words, the statutory organization indicates that the Justice Center's role as counsel is part of its obligation to act as an oversight agency, rather than a separate duty. Moreover, there is no clear distinction between the capacities in which the Justice Center acts in these roles. In both, as previously discussed, the Justice Center seeks to protect the interests of vulnerable persons and assure that they are provided with proper care (see Executive Law § 551 [2]). That is particularly true here; in both roles, the issues presented were identical, the same facts were dispositive, the standards of proof were the same, and closely-related relief was sought. Thus, the two roles are not "functionally discrete and traced to very different source lines of authority" (Matter of Juan C. v Cortines, 89 NY2d at 669), but are instead so closely related that — in the circumstances presented — they overlap.
Notably, the Justice Center does not argue that there will be any interference with the allocation of authority between its two roles if collateral estoppel is applied in this proceeding. Instead, it argues that such interference could potentially occur in the future if an agency's failure to prove a disciplinary case precludes the Justice Center from fulfilling its statutory oversight obligations. This is an entirely speculative argument and, in any event, the determination whether privity exists "must be made on a case-by-case basis" (id. at 674; see Watts v Swiss Bank Corp., 27 NY2d at 277). In the particular circumstances presented here and without prejudging other situations that may arise, petitioner demonstrated that "the connection between [OPWDD and the Justice Center is] such that the interests of the [Justice Center] can be said to have been represented in the prior proceeding" (Green v Santa Fe Indus., 70 NY2d at 253; see Matter of Stephiana UU., 66 AD3d 1160, 1163 [2009]; compare Matter of Walter W. v State of N.Y. Dept. of Social Servs., 235 AD2d 592, 593-594 [1997], lv denied 89 NY2d 813 [1997]). Accordingly, she met her burden of proof to establish that the Justice Center was in privity with OPWDD.
As the requirements of identity of issue were otherwise satisfied, the burden shifted to the Justice Center to demonstrate that it did not have "a full and fair opportunity to contest the prior determination" (Buechel v Bain, 97 NY2d at 304; see Parker v Blauvelt Volunteer Fire Co., 93 NY2d at 349). The Justice Center makes no such claim (see Wen Mei Lu v Wen Ying Gamba, 158 AD3d at 1035; Corvetti v Town of Lake Pleasant, 146 AD3d 1118, 1121 [2017]). Accordingly, upon consideration of all the circumstances and of the underlying public policies (see D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d at 668), we find that the Justice Center was precluded by collateral estoppel from relitigating the questions of fact that were resolved in petitioner's favor in the disciplinary proceeding. Thus, her petition to annul the Justice Center's determination should have been granted and the determination annulled. The matter must be remitted to the Justice Center for amendment of the findings to reflect that the report is unsubstantiated and for compliance with the requirements of Social Services Law § 494. The remaining arguments are rendered academic by this determination.
Devine, Clark, Aarons and Pritzker, JJ., concur.
ADJUDGED that the determination is annulled, without costs, petition granted, and matter remitted to respondent Justice Center for the Protection of People with Special Needs for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Among other things, the arbitrator found that the resident had a long history of telling lies, had previously lied about petitioner, and had a grievance against petitioner. She found his credibility "quite low." She further found that petitioner's credibility was "above average, and certainly higher than [the resident's]." Finally, she found that the resident was a historically frequent user of marihuana, that he had had other opportunities to obtain the drug and that expert testimony in the record called the reliability of the drug test into question.