■ In the Matter of LISA Z. and Another, Children Alleged to be Abused and/or Neglected. TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RAYMOND Z., Appel-

lant. [699 NYS2d 810] —Cardona, P. J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered September 8, 1998, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondent's children to be abused and/or neglected.

Respondent is the father of Lisa (born in 1992) and James (born in 1997). Following reports that respondent was sexually abusing Lisa, petitioner began an investigation which resulted in the placement of the children in foster care. Petitioner commenced this proceeding, pursuant to Family Court Act article 10, alleging that Lisa was an abused and neglected child based upon the fact that respondent, *inter alia*, touched her vagina in an inappropriate manner. Petitioner further alleged, *inter alia*, that due to the abuse and neglect of Lisa, James was derivatively neglected by respondent. After a fact-finding hearing, Family Court adjudicated Lisa to be an abused child and James to be a neglected and a derivatively neglected child. A dispositional order was entered upon consent.

Initially, we find no merit to respondent's claim on this appeal that Family Court erroneously denied his motion for an adjournment of the hearing to obtain Helen Hemmbroke or another expert to testify. Although respondent represented Hemmbroke as an expert in child interviewing techniques, no disclosures were made concerning the content of her testimony or that of any other expert. Furthermore, at the time of the motion, petitioner had seven witnesses ready in order to go forward with the trial. Under all the circumstances, we cannot say that Family Court abused its discretion in denying respondent's request for an adjournment or in refusing to bifurcate the hearing.

Turning to the merits, respondent contends that Family Court's adjudication of Lisa as an abused child is not supported by a preponderance of the evidence. More particularly, he asserts that her out-of-court statements accusing him of sexual abuse were not sufficiently corroborated. Based upon our review of this record, we disagree.

A finding of parental abuse and/or neglect under Family Court Act article 10 must be supported by a preponderance of the evidence (*see*, Family Ct Act § 1046 [b] [i]; *Matter of Nicole V.*, 71 NY2d 112, 117; *Matter of Shaun X.*, 228 AD2d 730, 731). Moreover, where the evidence consists of out-of-court statements of a child, they must be corroborated by other proof "tending to support the reliability of the previous statements" (Family Ct Act § 1046 [a] [vi]; *see*, *Matter of Zachariah VV.*, 262 AD2d 719, 720; *Matter of Katje YY.*, 233 AD2d 695, 695-

696). Family Court has considerable discretion in evaluating whether there has been adequate corroboration (*see, Matter of Ashley M.*, 235 AD2d 858). Notably, both the testimony of child abuse experts (*see, Matter of Jaclyn P.*, 86 NY2d 875, 878, *cert denied sub nom. Papa v Nassau County Dept. of Social Servs.*, 516 US 1093; *Matter of Katje YY., supra*, at 696) and evidence of behavioral changes in a child (*see, Matter of Tanya T.*, 252 AD2d 677, 678, *lv denied* 92 NY2d 812; *Matter of Ashley M., supra*, at 858; *Matter of Shaun X., supra*, at 731-732) have been held to constitute sufficient corroboration.

In the instant case, Lisa Bontempi testified that Lisa was a student in her special education class since February 1997 and exhibited violent and aggressive behavior consisting of "[t]hrowing furniture, hitting, screaming, kicking, spitting, biting, swearing and scratching other children". She stated that Lisa frequently used curse words, such as "f****r, bitch face [and] dumb ass", that were quite sophisticated for a child her age. She indicated that during the summer of 1997 Lisa refused to wear underwear. Bontempi recounted an incident on October 24, 1997 when Lisa referred to her father's "pee pee" and said that "Poppy said to sit on the big rock". She stated that on one occasion she saw Lisa sexually act out with another child in the play area. She related that, after Lisa began taking certain medications in November and December 1997, her behavior improved.

Catherine Gee, a social worker for the school district, confirmed Bontempi's reports of Lisa's violent and aggressive behavior and use of profanity. In addition, she related that on October 20, 1997 during play therapy, Lisa undressed the dolls, put the father doll on top of the mother doll and had the father doll kiss the mother doll in the genital area. Gee stated that Lisa proceeded to do the same thing with the father doll and the little girl doll while making the mother doll yell "help!". She testified that during another play therapy session on February 27, 1998, Lisa undressed the dolls and told Gee that her father shows her his "pee pee" and also that her father kisses her on the mouth and gives her "lovies". Gee stated that, during a third play therapy session on March 2, 1998 which was also attended by Edward Valley, an Ithaca police officer, and Tammy Pickert, a case worker employed by petitioner, Lisa undressed the dolls and put them in bed stating that they were having sex.

Pickert testified that after receiving a report regarding the sexual abuse and maltreatment of Lisa, she met with Lisa in March 1998. She confirmed Gee's report of Lisa's behavior dur-

ing the March 2, 1998 session. She further stated that Lisa used a lot of foul language, called one of the dolls a "f****r" and told the other "I hate you". Pickert related that during another interview, Lisa told her that her father had touched her "monkey", the term she used for vagina, and that she "had slapped her dad's pee pee real hard". She further stated that Lisa said her dad "pees on her" and that "he would pee in her mouth, and make her drink it". Pickert indicated that, later in the interview, Lisa told her that she was "sleeping and * * * naked when her dad touched her monkey and that he actually had pee'd in her monkey". Pickert testified that on March 18, 1998, Lisa spontaneously told her "that she wasn't with her mother anymore because she had told that her dad had pee'd in her mouth".

Sharon Song, a psychiatric social worker, diagnosed Lisa with a disruptive behavior disorder and prescribed Risperol and Zoloft to control her violent and aggressive behavior. She testified that Lisa's conduct was indicative of someone who had been physically and sexually abused. She opined, however, that Lisa was not psychotic and did not exhibit symptoms such as delusions, thought disorders or hallucinations.

Mary Whittier, a social worker specializing in forensic interviews with children suspected of being abused, testified as a validation expert. She testified that Lisa reported on March 18, 1998 that her father was in jail because he was bad and that she "told that lady that he pee'd in [her] mouth". She stated that, after identifying male and female body parts on a diagram, Lisa related that her father's "pee pee" was big and hard and that a pink substance came out of it. She stated that Lisa further indicated her father had touched her beneath her underwear and that "him pee'd in [her] mouth". According to Whittier, Lisa's behaviors, including her rapid attachment to her foster parents, sexually acting out between dolls, knowledge of oral to genital contact and genital to genital contact, violent and aggressive conduct and change in demeanor during the interview, were all consistent with sexual abuse. Despite the lack of physical evidence, Whittier opined that Lisa was a victim of sexual abuse by respondent.

In our view, Lisa's out-of-court statements are sufficiently corroborated by other proof which support Family Court's finding of abuse by a preponderance of the evidence. In addition to the above witnesses, respondent's own witnesses related that Lisa engaged in violent conduct, used profanity and had knowledge of sexual matters which were clearly atypical of a child her age. Based upon this record, we conclude that Family

Court's decision has a sound and substantial basis (*see, Matter of Angelina AA.,* 211 AD2d 951, 952, *lv denied* 85 NY2d 808).

Respondent also argues that Family Court's findings of neglect with respect to James are not supported by a preponderance of the evidence. We note that evidence of abuse or neglect of one child may be considered on the issue of abuse or neglect of another child (*see,* Family Ct Act § 1046 [a] [i]; *Matter of Katie R.,* 251 AD2d 698, 700, *lv denied* 92 NY2d 809). While evidence of sexual abuse of one child does not, standing alone, establish a prima facie case of derivative neglect of another child, it may support such a finding where the respondent's conduct "demonstrate[s] such an impaired level of judgment as to create a substantial risk of harm for any child in his care" (*Matter of Angelina AA., supra,* at 953; *see, Matter of Amanda LL.,* 195 AD2d 708, 709).

In our view, the circumstances surrounding respondent's victimization of Lisa disclose an "inability to understand or fulfill the parental responsibility of protecting children from harm", which support Family Court's finding of derivative neglect of James (*Matter of Heather J.,* 244 AD2d 762, 764). We further find that the testimony concerning the developmental delays in James' ability to lift his head, sit up, hold a bottle or crawl, as well as respondent's apparent lack of concern, support Family Court's finding of neglect irrespective of the evidence relating to Lisa (*see,* Family Ct Act § 1012 [f] [i] [B]). Therefore, we decline to disturb Family Court's decision with respect to either child. We have considered respondent's remaining claims and find them to be without merit.

Mikoll, Crew III, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.