■ In the Matter of CADEJAH AA. and Another, Children Alleged to be Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TYSON BB., Appellant, et al., Respondent. (And Other Related Proceedings.) [823 NYS2d 278]—

Spain, J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered May 12, 2004, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.

This appeal is one of several involving respondents Alberta CC. (hereinafter the mother) and Tyson BB. (hereinafter the father) and the children, Cadejah AA. (born in 1987) and

Raymond BB. (born in 2000).* It stems from Family Court's order, entered May 12, 2004, which, among other things, accepted the father's admission to the allegations in a neglect petition, made specific findings of neglect against him with respect to Cadejah and adjudicated both children to be neglected (25 AD3d 1027 [2006], *lv denied* 7 NY3d 705 [2006]).

In September 2003, the father was caught spying on his teenage stepdaughter, Cadejah, through a hole that he had enlarged in her bedroom wall. As a result, he was the subject of an order of protection in Family Court directing that he leave and stay away from the home, and that he refrain from having any contact with Cadejah. Thereafter, petitioner filed a neglect petition against the parents naming both children. The petition against the father was based upon his admissions to caseworkers that he had watched Cadejah take a shower and had been voyeuring her through the hole in her bedroom wall.

In April 2004, Family Court accepted the father's admissions to enlarging the hole in his stepdaughter's wall and, on one occasion, looking at her in her room observing "nothing unusual," but concededly invading her privacy reflecting "an inappropriate manner of parental supervision." He also expressly waived his right to appeal. As a result, by order entered May 12, 2004, the court placed Raymond with the mother under the supervision of petitioner and placed Cadejah with petitioner for placement outside the home. The court ordered that the father, among other things, cooperate in an evaluation as an alleged sexual offender, cooperate in all services to which he is referred and remain subject to the order of protection prohibiting any contact with Cadejah. The father consented to these conditions and waived his right to appeal the order of disposition.

Thereafter, this Court rejected the father's appellate counsel's *Anders* brief and withheld decision on the father's appeal pending assignment of new counsel (25 AD3d 1027, 1029 [2006], *supra*). The father, now proceeding with new appellate counsel, appeals from the May 12, 2004 finding of neglect and dispositional order, asserting—as the sole issue on appeal—that his waiver of appeal should not preclude his challenge to Family Court's order, maintaining that the court erred in finding that he had derivatively neglected his son, Raymond.

While the father appears to have clearly understood his explicit waiver of his right to appeal from the Family Court order, we will exercise our inherent authority to review any matter

---

* The mother is the biological parent of both children. The father is the stepparent of Cadejah and Raymond's biological father.

involving the welfare of a child in a Family Court proceeding (*see id.* at 1028 n 1). Turning then to the merits, a careful review of the record reveals that Family Court made no finding of derivative neglect as to Raymond (*see* Family Ct Act § 1046 [a] [i]). The impact or ramifications, if any, of the father's actions with respect to Raymond were not discussed at any point during the proceeding. The only mention of Raymond is in the subsequent written order but, again, it contains no discussion of derivative neglect.

Further, our own review of the record reveals insufficient evidence to sustain the finding of derivative neglect as to Raymond. Although "proof of . . . neglect of one child shall be admissible evidence on the issue of the . . . neglect of any other child" (*Matter of John QQ.,* 19 AD3d 754, 756 [2005]; *see* Family Ct Act § 1046 [a] [i]), "such evidence typically may not serve as the sole basis for a finding of neglect" (*Matter of Evelyn B.,* 30 AD3d 913, 914 [2006]; *see Matter of Rebecca X.,* 18 AD3d 896, 898 [2005], *lv denied* 5 NY3d 707 [2005]). We must also consider "the nature of the direct abuse [or neglect], notably its duration, the circumstances surrounding its commission and whether, on the whole, it can be said to evidence fundamental flaws in the respondent's understanding of the duties of parenthood" (*Matter of Amanda LL.,* 195 AD2d 708, 709 [1993]; *see Matter of Evelyn B., supra* at 914-915).

Where a young child has been sexually abused, we have frequently held that the abused child's siblings were derivatively neglected (*see Matter of Sabrina M.,* 6 AD3d 759 [2004]; *Matter of Martha Z.,* 288 AD2d 706 [2001]; *Matter of Kaitlyn R.,* 267 AD2d 894 [1999]; *Matter of Nathaniel TT.,* 265 AD2d 611 [1999], *lv denied* 94 NY2d 757 [1999]). In such circumstances, the physical and emotional harm inflicted on the child victim is evidence that the perpetrator lacks any capacity to care for and protect the other children in his or her care. Likewise, in cases where abuse or neglect was repeated (*see Matter of Rebecca X., supra; Matter of Lisa Z.,* 267 AD2d 800 [1999]; *Matter of Heather J.,* 244 AD2d 762 [1997]; *Matter of Amanda LL., supra*), involved violence (*see Matter of Christina BB.,* 305 AD2d 735 [2003]; *Matter of Ashley D.,* 268 AD2d 803 [2000], *lv denied* 94 NY2d 763 [2000]), was perpetrated on multiple victims (*see Matter of Shaun X.,* 300 AD2d 772 [2002]; *Matter of Akia KK.,* 282 AD2d 839 [2001]; *Matter of Anita U.,* 185 AD2d 378 [1992]) or was accompanied by evidence that the other children were nearby when the abuse occurred (*see Matter of Melissa L.,* 276 AD2d 856 [2000], *lv denied* 96 NY2d 702 [2001]), we have found the evidence sufficient to uphold findings of derivative neglect.

Here, in contrast to the allegations regarding his more substantial admissions to caseworkers, the adjudication of neglect of Raymond is based solely on the father's admission to a single act of voyeurism with regard to his teenage stepdaughter. No evidence was introduced that either child was aware of the father's behavior or as to any impact the father's conduct had on his then three-year-old biological son. Although differences in gender and parentage between a child who has been directly abused or neglected and those alleged to be derivatively neglected certainly will not preclude a derivative finding of neglect (*see Matter of Shaun X., supra* at 772; *Matter of Dutchess County Dept. of Social Servs. v Douglas E.*, 191 AD2d 694, 695 [1993]), such factors are relevant here in determining whether the father's behavior constitutes sufficient evidence that the father's conduct placed Raymond at risk of harm (*see* Family Ct Act § 1012 [f] [i] [B]). Under these circumstances, the father's limited admission was insufficient evidence to support a derivative finding of neglect as to Raymond (*see Matter of Natasha RR.*, 27 AD3d 788, 789 [2006]; *Matter of Amber VV.*, 19 AD3d 767, 768 [2005]; *Matter of Randy AA.*, 265 AD2d 690, 691-692 [1999]).

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing the finding that respondent Tyson BB. neglected his son, Raymond BB., and, as so modified, affirmed.