■ In the Matter of STEPHIANA UU. and Others, Children Alleged to be Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RITA WW. et al., Appellants. [887 NYS2d 699]—

McCarthy, J. Appeals (1) from an order of the Family Court of Columbia County (Czajka, J.), entered September 15, 2008, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected, and (2) from an order of said court, entered September 25, 2008, which granted petitioner's motion for a determination that reasonable efforts to reunite respondents with the children are no longer required.

In 2004, Dutchess County Family Court (Sammarco, J.) issued a finding of permanent neglect with respect to respondents' five youngest children. That court dismissed certain sexual abuse allegations. However, respondents were ordered to attend sexual nonoffender training and respondent Gilbert UU. (hereinafter the father) was required to participate in anger management counseling. Although the children were removed from respondents' home for several years as a result of the Dutchess County proceedings, the four youngest children were eventually returned to respondents.[1]

In February 2008, petitioner filed a new neglect petition with respect to the four minor children alleging excessive corporal punishment, sexual abuse and other acts of neglect. After a hearing, Family Court found that respondents had committed acts of neglect with respect to all four children. Upon respondents' refusal to engage necessary services, the court also granted petitioner's motion for a determination that further efforts to reunite the family were not required. This appeal ensued.

"To establish neglect, a petitioner must demonstrate, by a preponderance of the evidence, 'that [a] child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the child is a consequence of the failure of the parent to exercise a minimum degree of proper supervision or guardianship of the child' " (*Matter of Chelsea M.*, 61 AD3d 1030, 1031 [2009], quoting *Matter of Krista LL.*, 46 AD3d 1209, 1210 [2007]; *see* Family Ct Act § 1046 [b] [i]; § 1012 [f] [i]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *Matter of Shalyse WW.*, 63 AD3d

---

1. The eldest of the five children reached majority in January 2007.

1193, 1195 [2009], *lv denied* 13 NY3d 704 [2009]; *Matter of Rebecca KK.*, 51 AD3d 1086, 1087 [2008]). "Moreover, parental behavior must be evaluated 'objectively,' in light of whether a 'reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances then and there existing' " (*Matter of Chelsea M.*, 61 AD3d at 1031, quoting *Nicholson v Scoppetta*, 3 NY3d at 370; *see Matter of Rebecca KK.*, 51 AD3d at 1087).

Here, even without considering the allegations of sexual abuse in the 2008 petition, there is a sound and substantial basis in the record reflecting physical violence and emotional abuse and neglect to which the children were exposed. In February 2007, Stephiana UU. (born in 1991) was diagnosed with a depressive disorder and post-traumatic stress disorder. In 2008, she reported respondents to police after she and her siblings were subjected to new instances of physical violence and emotional abuse. The father also made it known to the children that he considered them a burden, and respondent Rita WW. (hereinafter the mother) refused to provide their special needs child with medication as prescribed for him. Respondents denied engaging in any abusive conduct and blamed Stephiana for conflict in the family, setting up a credibility determination for Family Court which we find no reason to disturb (*see Matter of Shalyse WW.*, 63 AD3d at 1196; *Matter of Evelyn B.*, 30 AD3d 913, 914 [2006], *lv denied* 7 NY3d 713 [2006]).

As Family Court noted, these children were particularly vulnerable in light of the prior determination of permanent neglect and their prolonged experience in foster care. Respondents' ongoing failure to rectify or take responsibility for the destructive environment in which their children existed or recognize their need for services demonstrates respondents' "fundamental misunderstanding of [their] parental responsibilities" (*Matter of Evelyn B.*, 30 AD3d at 915) and their inability to safeguard their children's physical, mental and emotional well-being (*see Matter of Shalyse WW.*, 63 AD3d at 1196; *Matter of Evelyn B.*, 30 AD3d at 915-916).

Under the circumstances, we find respondents' attempt to invoke the doctrine of collateral estoppel unavailing. Collateral estoppel is an equitable doctrine " 'grounded on concepts of fairness and should not be rigidly or mechanically applied' " (*Matter of Juan C. v Cortines*, 89 NY2d 659, 667 [1997], quoting *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664 [1990]). "Because the doctrine is based on general notions of fairness there are few immutable rules" (*Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]). We are cognizant of the fact that Family

Court proceedings are "directed to the protection of minors" and, "[c]onsequently, any relevant and material evidence may be admitted in any hearing under Family Court Act article 10" (*Matter of Charles DD.*, 163 AD2d 744, 747 [1990]). Moreover, "Family Court is duty bound to determine not only whether there has been neglect or abuse in the past, but also the likelihood of such conduct in the future. A parent's rights must be subordinate to the paramount purpose of the statute, which reflects the strong public policy of the State to protect a child's interest against an unwilling or inept discharge of parental responsibilities" (*id.* [citation omitted]). The essential ingredients of collateral estoppel are " '[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination' " (*Matter of Juan C. v Cortines*, 89 NY2d at 667, quoting *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]).

Initially, we must examine whether petitioner is in privity with the Dutchess County Department of Social Services. Privity is "an amorphous concept not easy of application" and it "does not have a technical and well-defined meaning" (*Matter of Juan C. v Cortines*, 89 NY2d at 667 [internal quotation marks and citation omitted]). "Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding" (*Green v Santa Fe Indus.*, 70 NY2d 244, 253 [1987] [citation omitted]). We perceive no basis in the record that would support a conclusion that the interests of the Dutchess County Department of Social Services in prosecuting allegations of child abuse and neglect against respondents were in any material respect different from those of petitioner. Accordingly, we find that privity exists and turn our attention to the identity of the issues in the prior proceeding.

It is well settled that " '[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination' " (*Matter of Juan C. v Cortines*, 89 NY2d at 667, quoting *Kaufman v Eli Lilly & Co.*, 65 NY2d at 456). For collateral estoppel to apply, it is "critical" that the issues be "identical" (*see People v Roselle*, 84 NY2d 350, 357 [1994]; *see also Ryan v New York Tel. Co.*, 62 NY2d 494, 500-501 [1984]). The record does not include the petitions filed in Dutchess County Family Court and, with one exception, respondents failed to establish that any of the myriad instances of incestuous sexual abuse reflected in the record were actually considered and decided in

the prior proceedings. Dutchess County Family Court did strike from its findings language relating to respondents' knowledge of sexual abuse perpetrated upon Stephiana by her half brother and respondents' failure to take appropriate action with respect to that abuse. Petitioner was therefore precluded from relitigating that particular allegation in Columbia County. However, with the one exception noted, respondents have not met their burden of establishing an identity of issues between the Dutchess County and Columbia County proceedings and the remaining allegations of sexual abuse in paragraphs four, six and eight of the current petition were properly considered.

Although all of the alleged acts of sexual abuse apparently predated the Dutchess County proceeding, respondents' failure to seek treatment and/or counseling for Stephiana or her siblings persisted even after the Dutchess County adjudication. Subsequent allegations of neglect not covered by a prior petition are not barred by collateral estoppel or res judicata (*see Matter of Mercedes R.*, 300 AD2d 664, 664 [2002]; *Matter of Jesus II.*, 249 AD2d 846, 847 [1998]; *Matter of Nassau County Dept. of Social Servs. [Jean G.]*, 225 AD2d 779, 780-781 [1996]). For the same reason, evidence of excessive corporal punishment that predated, but was not raised in, the Dutchess County proceeding was relevant and material to evaluating the environment in which additional acts of excessive corporal punishment were inflicted on the children in Columbia County, and were therefore properly considered (*see Matter of Chelsea M.*, 61 AD3d at 1032; *Matter of Evelyn B.*, 30 AD3d at 915).[2] Given the prior Dutchess County orders requiring sexual nonoffender training and anger management counseling, and respondents' poor compliance history with those orders, such evidence was particularly relevant.

Respondents also contend that Family Court failed to comply with statutory requirements in relieving petitioner of its obligation to make reasonable efforts to reunite the family (*see* Family Ct Act § 1039-b). Respondents, who were represented by counsel, failed to preserve this issue, as they did not oppose petitioner's motion for a determination to relieve it of this obligation. Were we to reach this issue, we would find that the court complied with the statute.

2. We note that a number of jurisdictions permit consideration of evidence that was or could have been presented in a prior child neglect proceeding determined in favor of the parents when subsequent proceedings are warranted based on additional acts of neglect (*see e.g. People ex rel. L.S.*, 721 NW2d 83, 2006 SD 76 [2006]; *Scott v Prince George's County Dept. of Social Servs.*, 76 Md App 357, 545 A2d 81 [1988]; *In Interest of A.S.*, 12 Kan App 2d 594, 752 P2d 705 [1988]; *People In Interest of J.R.*, 711 P2d 701 [Colo Ct App 1985]; *In re Interest of V.B.*, 220 Neb 369, 370 NW2d 119 [1985]; *Matter of Newman*, 49 Or App 221, 619 P2d 901 [1980]).

A court may determine that reasonable efforts are no longer required upon a finding that "the parent of such child has subjected the child to aggravated circumstances" (Family Ct Act § 1039-b [b] [1]). Prior to finding aggravated circumstances for failure to engage or secure necessary services, the court must inform the parent "that such an admission could eliminate the requirement that the local department of social services provide reunification services to the parent" (Family Ct Act § 1012 [j]). Respondents indicated that they would not comply with all of the services recommended by petitioner. When petitioner orally moved for relief, the court imposed all recommended services and provided respondents additional time to comply. The court advised respondents that, "[s]hould they not do so, the [c]ourt will consider a request by [petitioner], on notice, to excuse further efforts on [petitioner's] part to impose upon [r]espondents the conditions they clearly have no intention of engaging in, nor find it necessary to engage in." Respondents subsequently acknowledged receipt of petitioner's written motion and declined the court's offer of additional time to respond. Respondents then again refused services and petitioner's motion was granted without objection.

We have reviewed respondents' remaining claims, including the mother's claim of ineffective trial counsel, and find them to be without merit.

Mercure, J.P., Lahtinen, Kane and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.