■ In the Matter of PAIGE WW., a Child Alleged to be Neglected. COLUMBIA COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CHARLES XX., Appellant, et al., Respondent. (And Another Related Proceeding.) [895 NYS2d 603]—

Garry, J. Appeals (1) from an order of the Family Court of Columbia County (Czajka, J.), entered January 16, 2009, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondents' child to be neglected and issued an order of protection, and (2) from an order of said court, entered March 6, 2009, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10-A, to continue the placement of the subject child.

Respondent Charles XX. (hereinafter the father) had five children with his former wife. The wife also had older children from a previous relationship who did not live in her household, including respondent Tina WW. (hereinafter the mother).[1] In 2002, the children of the father and the wife were removed as a result of child protective proceedings commenced in Dutchess County.[2] In 2005, the Dutchess County Family Court (hereinafter the 2005 court) determined that while the children had been in the care of the father and wife, three of them had been sexually abused and neglected, and the other two had been derivatively neglected. The father subsequently surrendered his parental rights to all but one of these children, and none of them lived with him again. In 2006, the wife died and, shortly thereafter, the father and the mother began living together. Paige WW. (hereinafter the child) was born to them in October 2007.

In April 2008, petitioner commenced the current neglect proceedings, alleging, among other things, that the father had a history of sexual abuse and had not engaged in court-ordered treatment. Family Court accepted admissions of neglect from the mother and conducted a fact-finding hearing with respect to the father. Thereafter, the court entered an order adjudicating the child as neglected by both parents, and issued an order of

---

1. The mother was apparently placed in foster care at age five and was later adopted by her foster parents.

2. The fifth child was removed shortly after her birth in 2003.

protection with respect to the father. The father now appeals from the dispositional order as well as from a subsequent permanency hearing order.

The father contends that the evidence was insufficient to support the derivative neglect determination. He was the only witness during the fact-finding hearing, and his testimony focused on the events leading to the decision and order of the 2005 court (hereinafter the 2005 decision). He denied that he had sexually abused his other children. Family Court rejected this testimony and determined, based upon the 2005 decision, that he did sexually abuse his other children. The court further found that by denying this abuse and by failing to participate in treatment ordered by the 2005 court, the father had derivatively neglected the child in this proceeding. The father contends on appeal that the determination was based on a mistaken reading of the 2005 decision, that he did not sexually abuse his other children, and, further, that the evidence of his current circumstances was insufficient to demonstrate any risk of harm to the child.

Proof of a parent's abuse or neglect of a child "shall be admissible evidence" as to the parent's neglect of another child (Family Ct Act § 1046 [a] [i]; see Matter of John QQ., 19 AD3d 754, 756 [2005]). Here, we find that the derivative neglect determination is supported by evidence that " 'demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in [the father's] care' " (Matter of Tiffany AA., 268 AD2d 818, 819-820 [2000], quoting Matter of Vincent M., 193 AD2d 398, 404 [1993]). The 2005 decision sustained allegations of both sexual abuse and neglect as against both parents, and Family Court relied upon that determination.[3] We note that while there were allegations regarding the father's conduct, the 2005 decision neither clearly identified nor clearly excluded the father as a perpetrator of sexual abuse. Its discussion of the father's conduct was limited to his abuse of alcohol, his failure to supervise the children at times when several known sex offenders who frequently associated with the family had access to them, and the adequacy of his response when the children displayed sexualized behavior. However, the 2005 court was unambiguous and explicit in its determination that the three older children were subjected to multiple acts of

---

3. The underlying 2005 petitions are not in the record and apparently were not before Family Court in 2008 when it heard these matters. It appears from the summary set forth in the 2005 decision that there was a claim made that the father himself engaged in direct sexual abuse of one of the children, but the specific allegations are not clear.

sexual abuse and that, as a result, they suffered significant physical and emotional harm. The 2005 court further found, at minimum, that the father acquiesced in the sexual abuse of his children by permitting known pedophiles to associate with them and by failing to supervise them; the father and wife were found to have been present in other parts of the house, drinking alcohol, when some of the molestations took place. Notably, the Family Ct Act defines an "abused child," with reference to sexual abuse, as any child under 18 whose parent "commits, *or allows to be committed* an offense against such child defined in article one hundred thirty of the penal law" (Family Ct Act § 1012 [e] [iii] [emphasis added]). Thus, even in the absence of an unambiguous determination that the father was himself a perpetrator, " 'the nature of [his] direct abuse [or neglect], notably its duration, [and] the circumstances surrounding its commission . . . can be said to evidence fundamental flaws in [his] understanding of the duties of parenthood' " sufficient to serve as a basis for Family Court's finding of derivative neglect (*Matter of Cadejah AA.*, 33 AD3d 1155, 1157 [2006], quoting *Matter of Amanda LL.*, 195 AD2d 708, 709 [1993]; *see Matter of Stephiana UU.*, 66 AD3d 1160, 1162 [2009]; *Matter of Evelyn B.*, 30 AD3d 913, 916 [2006], *lv denied* 7 NY3d 713 [2006]).

We further find that the prior determination of abuse and neglect was "sufficiently proximate in time 'such that it can be reasonably concluded that the conditions still exist' " (*Matter of Suzanne RR.*, 35 AD3d 1012, 1013 [2006], quoting *Matter of Hunter YY.*, 18 AD3d 899, 900 [2005]). Although the acts of abuse and neglect that led to the 2005 decision took place six years or more before the current proceedings were filed, there is no "bright-line, temporal rule beyond which we will not consider older child protective determinations" (*Matter of Evelyn B.*, 30 AD3d at 915; *but see Matter of Natasha RR.*, 27 AD3d 788, 789 [2006]). While the evidence as to whether the conditions that attended the 2005 decision still prevailed in 2008 is sparse, the record does reveal that the father did not comply when he was ordered in 2005 to participate in sex offender programming. Not until these proceedings were filed in 2008 did he obtain the required evaluation and, at the time of the fact-finding hearing, he had just begun to participate in programming (*cf. Matter of Jemila PP.*, 12 AD3d 964, 966 [2004]). As to the substance abuse that contributed to his prior acts of abuse and neglect, he testified that he was successfully participating in substance abuse training and had abstained since 2007 from the use of illegal drugs; however, he also testified that this participation was an involuntary condition of his parole for an unidentified offense. Moreover, the father's failure to accept responsibility for the se-

vere harm suffered by his other children went well beyond his denial that he had sexually abused them (*see Matter of Stephiana UU.*, 66 AD3d at 1162). When asked whether the other children had been sexually abused, he acknowledged only that "[i]t could have happened" while he was at work; additionally, he contradicted his 2005 testimony by claiming that he did not know that his former associates, who were his relatives and friends, were sex offenders when he allowed them to have contact with his other children. Thus, "inasmuch as the paramount purpose of Family Ct Act article 10 is the protection of the physical, mental, and emotional well-being of children" (*Matter of Evelyn B.*, 30 AD3d at 917 [internal quotation marks and citations omitted]), and given the vulnerability of the six-month-old child (*see id.*), we conclude that Family Court's determination of derivative neglect is supported by the requisite preponderance of the evidence (*see Matter of John QQ.*, 19 AD3d at 756).

However, the order of protection barring the father from all contact with the child until she reaches the age of 18 is not justified by the record. Family Court entered the order over the father's objection and upon the request of the Law Guardian, who argued that the father was not entitled to the rights of a biological parent because he was not married to the mother and had not been adjudicated to be the child's father. However, the petition identified him as the child's father, and both the father and the mother testified without contradiction that he was the father. While an in-court admission of paternity is not conclusive as a matter of law, it does constitute evidence of paternity, and that evidence was uncontradicted (*see Matter of Howard v Robinson*, 32 AD2d 837 [1969]; 2-19 New York Civil Practice: Family Court Proceedings § 19.13). Further, the record reveals that before the child's removal, the father acknowledged paternity by living with her and supporting her (*see* Family Ct Act § 517). Under these circumstances, the court should not have imposed the "drastic remedy" (*Matter of Melinda A. v Greene County Dept. of Social Servs.*, 278 AD2d 754, 755 [2000]) of denying all visitation without considering the child's best interest, which is the paramount consideration in any visitation determination (*see Matter of Neeley v Ferris*, 63 AD3d 1258, 1260 [2009]; *Matter of Rogowski v Rogowski*, 251 AD2d 827, 827 [1998]). No such analysis took place, and the record does not provide "compelling reasons and substantial evidence that . . . visitation is detrimental to the [child's] welfare" (*Matter of Kathleen OO.*, 232 AD2d 784, 786 [1996], quoting *Matter of Farrugia Children*, 106 AD2d 293, 293 [1984]). Accordingly, the matter must be remitted for a hearing in which the court shall reconsider the appropriate restrictions, if any, to be placed on the father's

visitation in light of this decision. The order of protection shall remain temporarily in effect until the parties first appear for this purpose, at which time Family Court shall make an appropriate temporary order (*see Matter of Shannon ZZ.*, 8 AD3d 699, 701-702 [2004]).

Finally, the father objects to the permanency hearing order on the ground that Family Court should have adjourned the permanency hearing to enable him to be present. However, the father's counsel was present and, without requesting an adjournment, indicated that the father objected to the permanency plan. In the absence of a request for an adjournment, and given the strict statutory timetable within which permanency hearings must be completed (*see* Family Ct Act § 1089 [a] [2]), we find no error (*contrast Matter of Anthony QQ.*, 48 AD3d 1014, 1015 [2008], *lv denied* 10 NY3d 714 [2008]).

Peters, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the order entered January 16, 2009 is modified, on the law, without costs, by remitting the matter to the Family Court of Columbia County for further proceedings not inconsistent with this Court's decision and, pending such proceedings, the order of protection shall remain in effect as a temporary order, and, as so modified, affirmed. Ordered that the order entered March 6, 2009 is affirmed, without costs.