In the Matter of KAYDEN E., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LUIS E., Appellant, et al., Respondent. (Proceeding No. 1.) In the Matter of NEVAEH E., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LUIS E., Appellant, et al., Respondent. (Proceeding No. 2.) In the Matter of AENEAS E., a Child Alleged to be Abused. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LUIS E., Appellant, et al., Respondent. (Proceeding No. 3.) In the Matter of NOAMI E., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; LUIS E., Appellant, et al., Respondent. (Proceeding No. 4.) [975 NYS2d 789]—

Stein, J. Appeals (1) from an order of the Family Court of Otsego County (Lambert, J.), entered May 7, 2012, which granted petitioner's applications, in proceedings Nos. 1 and 2 pursuant to Social Services Law § 384-b, to adjudicate Kayden E. and Nevaeh E. to be permanently neglected children, and terminated respondents' parental rights, (2) from an order of said court, entered September 6, 2012, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 10, to adjudicate Aeneas E. to be an abused child, and (3) from two orders of said court, entered May 7, 2012 and September 6, 2012, which granted petitioner's application, in proceeding No. 4 pursuant to Social Services Law § 384-b, to adjudicate Noami E. to be a permanently neglected child, and terminated respondents' parental rights.

Respondent Olivia E. (hereinafter the mother) and respon-

dent Luis E. (hereinafter the father) are the parents of Nevaeh E., Kayden E., Noami E. and Aeneas E. (born in 2008, 2009, 2010 and 2011, respectively). In 2009, when Kayden was less than two months old, she was admitted to the hospital with serious, life-threatening injuries, including a skull fracture, severe brain damage and other bone fractures. Kayden and Nevaeh were removed from respondents' home and, after proceedings were commenced against respondents pursuant to Family Ct Act article 10, Family Court, in a February 2010 order, found that Kayden was abused, that Nevaeh was derivatively abused and that both children were severely abused. This Court affirmed those findings on appeal (*Matter of Kayden E. [Luis E.]*, 88 AD3d 1205 [2011], *lv denied* 18 NY3d 803 [2012]).

In May 2010, while the father's appeal was pending, petitioner filed two petitions alleging that respondents had permanently neglected Kayden and Nevaeh (proceeding Nos. 1 and 2) and seeking an order terminating respondents' parental rights and freeing the subject children for adoption. Upon the births of Noami and Aeneas, those children were also removed from respondents' custody and placed in foster care with their siblings. Petitions were subsequently filed alleging that Aeneas was, among other things, abused (proceeding No. 3) and that Noami was permanently neglected (proceeding No. 4).[1] After fact-finding hearings on each of the foregoing petitions, Family Court, in three separate orders, found that respondents had permanently neglected Kayden, Nevaeh and Noami and had derivatively abused Aeneas. Following dispositional hearings, Family Court terminated respondents' parental rights and freed Kayden, Nevaeh and Noami for adoption and, with respect to Aeneas, issued an order continuing his placement in petitioner's custody and directing respondents to cooperate with various services on referral by petitioner. The father now appeals, challenging the findings that he permanently neglected Kayden, Nevaeh and Noami and derivatively abused Aeneas, as well as the dispositional orders entered thereon.[2]

We affirm. The father initially challenges Family Court's finding that Aeneas was derivatively abused. Proof that one child

---

**1.** In a December 2010 order, Family Court found that Noami was derivatively abused by respondents.

**2.** The father's appeal from the May 2012 fact-finding order with respect to Noami must be dismissed, as no appeal as of right lies from an order of fact-finding in a permanent neglect proceeding (*see Matter of Michael JJ. [Gerald JJ.]*, 101 AD3d 1288, 1289 n 1 [2012], *lv denied* 20 NY3d 860 [2013]). However, the father's appeal from the dispositional order in that proceeding brings up for review the fact-finding order (*see Matter of Arianna I. [Roger I.]*, 100 AD3d 1281, 1282 n 1 [2012]).

has been abused is admissible evidence of the abuse of another child (*see* Family Ct Act § 1046 [a] [i]; *Matter of Paige WW. [Charles XX.]*, 71 AD3d 1200, 1202 [2010]). While such proof " 'typically may not serve as the sole basis for [such] a finding' " (*Matter of Joanne II. [Thomas II.]*, 100 AD3d 1204, 1205 [2012], quoting *Matter of Cadejah AA.*, 33 AD3d 1155, 1157 [2006]; *see* Family Ct Act § 1046 [a] [i]), it can establish derivative abuse when the conduct at issue " 'evidence[s] fundamental flaws in the respondent's understanding of the duties of parenthood' so profound as to place any child in his or her care at substantial risk of harm" (*Matter of Joanne II. [Thomas II.]*, 100 AD3d at 1205, quoting *Matter of Evelyn B.*, 30 AD3d 913, 915 [2006], *lv denied* 7 NY3d 713 [2006]; *see Matter of Paige WW. [Charles XX.]*, 71 AD3d at 1203; *Matter of Cadejah AA.*, 33 AD3d at 1157).

Here, the hearing testimony established that, although the father received counseling services, he refused to acknowledge that Kayden had been abused or that respondents were responsible for such abuse, and he provided incomplete and implausible explanations for how Kayden's severe injuries were sustained.[3] Indeed, the father persists in challenging the underlying determination that he severely abused Kayden, notwithstanding his unsuccessful appeal to this Court (*Matter of Kayden E. [Luis E.]*, 88 AD3d at 1206). The severe abuse inflicted upon Kayden, together with the father's inability or unwillingness to take responsibility for her injuries, evidences such fundamental flaws in his understanding of his parental duties as to place any child in his care at a substantial risk of harm. Deferring to Family Court's credibility assessments, we are satisfied that the finding of derivative abuse of Aeneas by the father is supported by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]; *Matter of Nicholas S. [John T.]*, 107 AD3d 1307, 1310 [2013], *lv denied* 22 NY3d 854 [2013]).

We similarly reject the father's claim that Family Court erred by finding that he permanently neglected Kayden, Nevaeh and Noami. In this regard, "petitioner was required to demonstrate,

---

**3.** As we stated in our prior decision, Kayden's injuries "included a skull fracture, severe brain damage and subdural bleeding, multiple rib fractures and a fractured femur, were life-threatening and required extensive treatment, including a ventilator, anticonvulsive medication, and a permanent ventriculoperitoneal shunt to drain excess cerebrospinal fluid into her abdominal cavity [and] left Kayden with a severe seizure disorder, impaired vision, spastic quadriparesis, and such delayed cognitive development that she will essentially remain an 'infant' for the rest of her life" (*Matter of Kayden E. [Luis E.]*, 88 AD3d at 1206).

by clear and convincing evidence, that [the father] failed substantially and continuously or repeatedly to maintain contact with or plan for the future of the child[ren], although physically and financially able to do so for a period of at least one year or 15 out of the most recent 22 months following the date the children were taken into petitioner's care" (*Matter of Joannis P. [Joseph Q.]*, 110 AD3d 1188, 1190-1191 [2013] [internal quotation marks and citations omitted]; *see* Social Services Law § 384-b [7] [a]; *Matter of Jayden J. [Johanna K.]*, 100 AD3d 1207, 1208 [2012], *lv denied* 20 NY3d 860 [2013]).[4] Failure to plan and failure to maintain contact are alternative bases for a finding of permanent neglect (*see Matter of Chorus SS. [Elatisha SS.]*, 93 AD3d 1097, 1098 [2012], *lv denied* 19 NY3d 807 [2012]), and the fact that the father maintained contact with petitioner and participated in services offered to him does not preclude a finding of permanent neglect if it is established that he failed and/or refused to plan for the children's future by acknowledging and correcting the conditions that led to the removal of the children in the first instance (*see Matter of Neal TT. [Deborah UU.]*, 97 AD3d 869, 871 [2012]; *Matter of Chorus SS. [Elatisha SS.]*, 93 AD3d at 1099; *Matter of Tailer Q. [Melody Q.]*, 86 AD3d 673, 674 [2011]).

Here, a critical service plan goal in the father's case was for him to acknowledge the cause of and responsibility for Kayden's injuries. Nonetheless, although the father began counseling, he did not complete it, and the evidence clearly reflects that he persistently refused to acknowledge that Kayden was severely abused or to accept any responsibility for her injuries, and he was unable to provide an acceptable explanation for what happened to this child. In fact, as previously noted, the father continues to dispute on appeal—as he did before Family Court—the prior finding that he was responsible for the abuse. These failures have prevented the father from gaining any insight into how to address the issues that led to the children's removal from his care in the first instance and, contrary to the father's contention, petitioner was "not obligated to accommodate [his] refusal to admit his . . . role in the abuse by formulating an alternative plan, i.e., one that would permit [the father] to receive treatment without admitting that such abuse did in fact occur" (*Matter of Michelle F.*, 222 AD2d 747, 748 [1995]). Ac-

4. We note that the father does not dispute the issue of whether petitioner used diligent efforts to encourage and strengthen his relationship with the children (*see Matter of Alysheionna HH. [Tara II.]*, 101 AD3d 1413, 1414 [2012], *lv denied* 20 NY3d 861 [2013]; *see also* Social Services Law § 384-b [7] [a]).

cordingly, the record clearly supports Family Court's finding that the father permanently neglected Nevaeh, Kayden and Noami.

Finally, Family Court's decision to terminate the father's parental rights with respect to Nevaeh, Kayden and Noami, rather than enter a suspended judgment, was a proper exercise of its discretion. " 'Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child[ren] and there is no presumption that any particular disposition, including the return of [the] child[ren] to a parent, promotes such interests' " (*Matter of Johanna M. [John L.]*, 103 AD3d 949, 951 [2013], *lv denied* 21 NY3d 855 [2013], quoting *Matter of Angelica VV.*, 53 AD3d 732, 733 [2008]; *see* Family Ct Act § 631; *Matter of Tailer Q. [Melody Q.]*, 86 AD3d at 675). Here, the siblings have resided together in foster care since their removal from respondents' care. The father, himself, testified that he does not acknowledge that Kayden was abused and takes virtually no responsibility for her injuries.[5] Although he was permitted to have visitation with Noami, he missed approximately 15 visits. Further, at the time of Noami's dispositional hearing, the father was homeless and unemployed. Notably, the mother and the father each accused one another of domestic violence and the father admitted to engaging in at least one act of domestic violence. Viewing the evidence in its entirety and according appropriate deference to Family Court's choice of dispositional alternatives (*see Matter of James J. [James K.]*, 97 AD3d 936, 939 [2012]; *Matter of Jyashia RR. [John VV.]*, 92 AD3d 982, 984 [2012]; *Matter of Tailer Q. [Melody Q.]*, 86 AD3d at 675), we find a sound a substantial basis in the record for its determination that termination of the father's parental rights is in the best interests of the three children (*see Matter of Joannis P. [Joseph Q.]*, 110 AD3d at 1192; *Matter of James J. [James K.]*, 97 AD3d at 939), and we decline to disturb it.

Lahtinen, J.P., Spain and Egan Jr., JJ., concur. Ordered that the appeal from the order entered May 7, 2012 in proceeding No. 4 is dismissed, without costs. Ordered that the orders entered May 7, 2012 in proceeding Nos. 1 and 2 and September 6, 2012 in proceeding Nos. 3 and 4 are affirmed, without costs.

---

5. The father later testified that he feels "somewhat responsible" because at some point Kayden was lying on his chest and fell off, and he grabbed her, possibly causing her leg fracture.