*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 20, 2016          520817
                                                521656

_____

In the Matter of WARREN RR.,
    Alleged to be a Neglected
    Child.

ST. LAWRENCE COUNTY DEPARTMENT
    OF SOCIAL SERVICES,                    MEMORANDUM AND ORDER
                    Respondent;

BRITTANY Q. et al.,
                    Appellants.

_____

Calendar Date:   September 12, 2016

Before:  Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.

_____

        Susan Patnode, Rural Law Center of New York, Castleton
(Cynthia Feathers of counsel), for Brittany Q., appellant.

        Michelle I. Rosien, Philmont, for Christopher RR.,
appellant.

        David D. Willer, St. Lawrence County Department of Social
Services, Canton, for respondent.

        Christopher Obstarczyk, Latham, attorney for the child.

_____

Egan Jr., J.P.

        Appeals from two orders of the Family Court of St. Lawrence
County (Champagne, J.), entered March 3, 2015 and July 30, 2015,
which, among other things, granted petitioner's application, in a
proceeding pursuant to Family Ct Act article 10, to adjudicate

respondents' child to be neglected.

Respondents, Brittany Q. (hereinafter the mother) and Christopher RR. (hereinafter the father), are the unmarried parents of a son (born in 2014) (hereinafter the subject child). The father, who is a risk level three sex offender, has eight other children with five other women and an extensive history involving both the criminal justice system and petitioner. In 2003, the father pleaded guilty to two counts of rape in the second degree and two counts of rape in the third degree – stemming from incidents wherein he engaged in sexual intercourse and fathered children with two teenage girls – and was sentenced to a prison term of 1 to 5 years. Although the father was granted a conditional release, he twice violated the terms thereof and was returned to prison, where he remained until some point in 2008. According to the father, each of his subsequent attempts to have his risk level classification reduced have been unsuccessful.

Shortly before his incarceration in 2003, the father was found to have neglected three of his other children (based upon incidents of domestic violence with his then wife) and was directed to engage in preventative services, including substance abuse counseling. According to the father, he voluntarily surrendered his parental rights to these three children in October 2010. In the interim, by order entered May 15, 2008, the father was found to have permanently neglected one of his other sons and received a suspended judgment subject to various terms and conditions – including that he undergo an alcohol and substance abuse evaluation and cooperate with any recommended treatment. Upon the father's failure to, among other things, participate in alcohol and substance abuse services, the suspended judgment was revoked and the father's parental rights to this child were terminated. Thereafter, by order entered June 8, 2011, the father was found to have permanently neglected one of his daughters and, based upon, among other things, the father's failure to timely complete recommended services and his continued use of drugs and alcohol, his parental rights to this child were terminated. Finally, by order entered May 13, 2014, the father was found to have permanently neglected another son

and, as he failed to, among other things, complete recommended services, his parental rights to this child also were terminated.

Shortly thereafter, petitioner commenced this proceeding against the father and the mother alleging that the mother neglected the subject child by, among other things, sharing a residence with a convicted sex offender and that the father, based upon his prior convictions and extensive involvement with petitioner relative to his other children, derivatively neglected the subject child. During the pendency of this proceeding, the child remained in the mother's custody, and a temporary order of protection precluding the father from having any unsupervised contact with the child was issued. At the conclusion of the fact-finding hearing that followed, Family Court granted petitioner's application and, by order entered March 3, 2015, adjudicated the subject child to be neglected. Following a dispositional hearing, Family Court, by order entered July 30, 2015, continued the subject child's placement with the mother and placed both parents under the supervision of petitioner for a period of 12 months.[1] These appeals ensued.[2]

We begin with the father's assertion that Family Court erred in finding that he derivatively neglected the subject child. "Derivative neglect is established where the evidence demonstrates an impairment of parental judgment to the point that it creates a substantial risk of harm for any child left in that

---

[1] Even assuming that respondents no longer are under the supervision of petitioner and that the corresponding orders of protection have expired, these appeals are not moot as a finding of neglect has enduring consequences that may adversely affect respondents in future proceedings (see Matter of Shay-Nah FF. [Theresa GG.], 106 AD3d 1398, 1399 n 1 [2013], lv denied 21 NY3d 863 [2013]).

[2] The mother appealed from the fact-finding order, both parents appealed from the dispositional order and this Court granted the mother's subsequent motion to consolidate the appeals.

parent's care, and the prior neglect determination is sufficiently proximate in time to reasonably conclude that the problematic conditions continue to exist" (Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1240 [2012] [internal quotation marks and citations omitted]; accord Matter of Neveah AA. [Alia CC.], 124 AD3d 938, 939 [2015]; see Matter of Ilonni I. [Benjamin K.], 119 AD3d 997, 997 [2014], lv denied 24 NY3d 914 [2015]). The crux of the father's argument upon appeal is twofold – first, that the 2003 neglect adjudication is not sufficiently proximate to the instant proceeding to constitute proof of neglect within the meaning of Family Ct Act § 1046 (a) (i) and, second, that the 2008, 2011 and 2014 permanent neglect adjudications similarly cannot be considered as proof of neglect because such determinations were based upon the father's failure to plan rather than what he categorizes as affirmative acts of neglect. Neither of these arguments has merit.

While the 2003 neglect adjudication is somewhat attenuated, this Court consistently has held that "there is no bright-line, temporal rule beyond which we will not consider older child protective determinations" (Matter of Iryanna I. [Benjamin K.], 132 AD3d 1096, 1097 [2015] [internal quotation marks and citations omitted]; accord Matter of Sumaria D. [Madelyn D.], 121 AD3d 1203, 1204 [2014]; Matter of Paige WW. [Charles XX.], 71 AD3d 1200, 1203 [2010]; see Matter of Evelyn B., 30 AD3d 913, 915 [2006], lv denied 7 NY3d 713 [2006]). Similarly, evidence that a parent permanently neglected one child has long been considered in the context of determining whether such parent derivatively neglected another child in his or her care (see Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160, 1163 [2015], lv denied 25 NY3d 914 [2015]; Matter of Mikel B. [Carlos B.], 115 AD3d 1348, 1349 [2014]; Matter of Michael N. [Jason M.], 79 AD3d 1165, 1167-1168 [2010]; Matter of Krystal J., 267 AD2d 1097, 1098 [1999]) – particularly where, as here, the underlying adjudications reflect both a longstanding pattern of neglect and, more to the point, a longstanding inability and/or unwillingness to address serious substance abuse issues.

As evidenced by the documentary evidence in the record, the father repeatedly was directed to undergo substance abuse

counseling and treatment. Despite making some progress in this area over the years, the father frequently tested positive for marihuana (including on the date of the dispositional hearing) — purportedly due to the stress occasioned by petitioner's involvement in his life. Moreover, while the father's status as a risk level three sex offender admittedly "does not constitute per se neglect or otherwise create a presumption of neglect" (Matter of Hannah U. [Dennis U.], 97 AD3d 908, 909 [2012]), it nonetheless remains an important factor to consider in ascertaining whether the father's understanding of his parental duties is sufficiently flawed so as to place any child in his care at a substantial risk of harm. Notably, although the father acknowledged his conduct, testified that he completed offender treatment and indicated that his last sex offense was committed in 2002, his explanation for his sexual encounters with the teenage girls at issue — namely, that he was a 20-year-old man in the ninth grade and that these were simply the girls in his "social circle" — evidences a lack of insight as to the magnitude of his offenses. Given the previous finding of neglect, the prior terminations of the father's parental rights, the father's failure to address his pervasive substance abuse issues and his status as a risk level three sex offender (see Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1083-1084 [2015]; Matter of Alexander Z. [Melissa Z.], 129 AD3d at 1163-1164; Matter of Sumaria D. [Madelyn D.], 121 AD3d at 1205; Matter of Ilonni I. [Benjamin K.], 119 AD3d at 998; Matter of Michael N. [Jason M.], 79 AD3d at 1167-1168; Matter of Tradale CC., 52 AD3d 900, 902 [2008]; Matter of Evelyn B., 30 AD3d at 915), and taking into consideration both the vulnerable age of the subject child, who was not even four months old at the commencement of this proceeding, and the overarching purpose of Family Ct Act article 10 (see Matter of Paige WW. [Charles XX.], 71 AD3d at 1204), we find that Family Court's determination that the father derivatively neglected the subject child is supported by a preponderance of the evidence and, as such, it will not be disturbed.

We reach a similar conclusion with respect to Family Court's finding that the mother neglected the subject child. "The case law makes clear that a child may be adjudicated to be

neglected within the meaning of Family Ct Act § 1012 (f) (i) when a parent knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child and failed to act accordingly. Determining whether a parent exercised the requisite minimum degree of care is evaluated by asking whether, under the circumstances, a reasonable and prudent parent would have so acted" (Matter of Mary YY. [Albert YY.], 108 AD3d 803, 804 [2013] [internal quotation marks, brackets and citations omitted], lv denied 21 NY3d 865 [2013]; see Matter of Marcus JJ. [Robin JJ.], 135 AD3d 1002, 1004 [2016]). In this regard, "a finding of neglect does not require actual injury or impairment, but only an imminent threat that such injury or impairment may result" (Matter of Dylynn V. [Bradley W.], 136 AD3d 1160, 1162 [2016] [internal quotation marks and citations omitted]).

The mother readily admitted that she was fully familiar with the father's criminal convictions and prior history with petitioner – including the fact that he was a registered sex offender and had lost his parental rights to most of his other children. After speaking with whom she reluctantly characterized as one of the father's victims, the mother was convinced that the father never would harm their child and, therefore, ensured that he never was left alone with the child solely in an effort to ward off interference from petitioner. Although the mother and the father each testified that they resided in separate apartments within the same building, sharing only the common kitchen and bathroom, Family Court deemed such testimony to be "absurd" – crediting instead the testimony offered by one of petitioner's caseworkers, who indicated that the area where the father allegedly slept "was full of clutter," did not contain a bed and did not "look like anybody lived there." Based upon such testimony, Family Court essentially concluded that the mother and the father were in fact living together and that, in so doing, the mother had demonstrated a willingness to put her interests ahead of her child's welfare. Having reviewed the record as a whole, and taking into consideration the father's documented history and ongoing substance abuse issues, we have no quarrel with Family Court's conclusions in this regard, nor do we discern any basis upon which to disturb its finding that the mother

neglected the subject child by allowing him to reside in the same household with the father (see e.g. Matter of Mary MM., 38 AD3d 956, 957 [2007]).  The parties' remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lynch, Devine, Clark and Mulvey, JJ., concur.

ORDERED that the orders are affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court